CHAN YOUNG LEE, a minor, by his parents and guardians ad litem, BO HYUN LEE and WAN KI KIM, BO HYUN LEE, individually, WAN KI KIM, individually, and YOUNG MIN LEE, a minor, by his parents and guardians ad litem BO HYUN LEE and WAN KI KIM, Plaintiffs Below-Appellants,
v.
CHOICE HOTELS INTERNATIONAL, INC., a Delaware Corporation, d/b/a QUALITY INNS AND RESORTS, Defendant Below-Appellee.
No. 376, 2009.
Supreme Court of Delaware.
Submitted: January 20, 2010.
Decided: April 13, 2010.
Revised: April 30, 2010.
Before HOLLAND, BERGER and RIDGELY, Justices.

ORDER
HENRY DuPONT RIDGELY, Justice.
This 13th day of April 2010, upon consideration of the briefs of the parties and their contentions at oral argument, it appears to the Court that:
(1) On May 6, 2001, Chan Young Lee ("Lee"), age 7, suffered catastrophic, permanent brain damage after he nearly drowned in a swimming pool at the Quality Resort Waterfront City in Bata, Indonesia. ("Quality Resort"). This litigation commenced when Plaintiffs Lee and his family (the "Lees") filed a complaint in the Superior Court on October 30, 2002. Nearly seven years later, the Superior Court granted summary judgment for Defendant Choice Hotels International, Inc. ("Choice"), after disqualifying the Lees' expert. Specifically, the trial court ruled that the Lees' expert could not testify on the standard of care for the design and operation of a swimming pool in Indonesia, denied substitution of another expert, and then granted summary judgment on the ground that the Lees could not prove negligence without an expert. Before this Court is the Lees' appeal of these decisions.
(2) The Lees raise three arguments. First, they contend the Superior Court erred in granting summary judgment because the Lees offered sufficient evidence of violations of Indonesian law to establish negligence per se. Second, they contend the Superior Court erred in excluding the expert testimony of Thomas Ebro concerning the relevant standard of care in Indonesia. Third, they contend the Superior Court erred in not permitting them to name a substitute expert on the applicable standard of care in Indonesia. We find merit to the Lees' first and second arguments. As a result, the Lees' third argument is moot. Accordingly, we reverse and remand for further proceedings consistent with this Order.
(3) Choice is a worldwide hotel franchisor with thousands of hotels and resorts in forty-two countries under the Quality, Comfort Inn, Comfort Suites, Clarion, Sleep Inn, Rodeway Inn, Econo Lodge and Mainstay Suites brand names. From its U.S. headquarters, Choice selects, trains, supervises, supports and promotes franchisees worldwide, including the Quality Resort. Choice plays a central role in the design and inspection of its franchised hotels; the Quality Resort may not perform material construction or alterations or improvements except in accordance with Choice's Rules and Regulations and written approval.
(4) On May 6, 2001, the Lees arrived at the Quality Resort and went to the pool in the afternoon. The pool was roughly shaped like the letter "U," with three deep water areas located at the bottom of the U and below the two endpoints. Seven-year-old Lee went into what appeared to be the shallow end of the pool. Soon after, he was found submerged and was rescued by a resort guest. Lee was submerged for long enough to cause catastrophic and permanent brain damage.
(5) The Lees make the following allegations regarding the pool. There were no lifelines or separators between the shallow and deep areas to indicate a change in depth; rather a lifeline was placed over the deep water area where Lee nearly drowned. The slope of the pool between the shallow and deep areas was steep, and there were no depth markings or indicators signaling the change in depth. No lifeguard was posted, nor were there signs warning that no lifeguard was on duty. The Lees contend the slope of the pool floor, the absence of depth markings and separators, and the lack of lifeguards violated Indonesian law concerning pool safety.
(6) The Quality Resort had two main entrances to the pool grounds. Signs were posted at each of these entrances explaining, in English and Indonesian, that there were no lifeguards on duty and that children under 12 years old must be accompanied by an adult. Lee's parents, Bo Hyun and Wan Ki, can both read English. According to Choice, Budi Santoso, the tour guide who met the Lee party in Indonesia, specifically advised both Bo Hyun and Wan Ki to watch their children in the pool area as there were no lifeguards on duty at the resort.
(7) After the Lees filed their complaint in the Superior Court, Choice moved for summary judgment. In response to Choice's motion for summary judgment, the Lees submitted the affidavit of Mr. Thomas C. Ebro, a purported aquatics safety expert, to establish the applicable standard of care under Indonesian law.[1] Mr. Ebro's affidavit alleged that the Quality Resort pool presented an unreasonable risk of danger to children because of:
(i) inadequate depth markings; (ii) the lack of conspicuous bottom stripes or demarcations; (iii) the placement of a lifeline over deep water; (iv) the lack of a taut emergency lifeline serving as a visual barrier and supportive hand hold; (v) the lack of a lifeguard; (vi) the lack of barriers between the kiddie pools and the large adult pools; (vii) the lack of a warning that there was no lifeguard on duty and to swim at your own risk; and (viii) the operation of a bar in the pool that diverted the attention of the only hotel employee present at the pool from pool safety.
Mr. Ebro based his opinion on his "review of the pleadings, depositions, photographs and other information and facts surrounding the case, as well as [his] knowledge and experience."
(8) Choice moved to strike Mr. Embro's testimony on swimming pool design and operation. The Superior Court granted Choice's motion "for several reasons, including the court's determination that the methodology employed and the opinions provided as a result, were unreliable." The Lees filed a motion for reconsideration and/or reargument which was denied.
(9) Four days after filing their motion for reconsideration and/or reargument, the Lees filed a motion seeking leave to designate a substitute liability expert. While that motion was pending, the Lees notified defense counsel that they intended to substitute H. Hendri Jonsi, S.P.T., an Indonesian engineer, in place of Mr. Ebro, as an expert witness on swimming pool design and construction. In support of their motion to designate a substitute liability expert, the Lees offered the declarations of Andrew I. Sriro, Esquire[2] addressing the applicability of an Indonesian regulation  Regulation of the Minister of Health of the Republic of Indonesia No. 61 Concerning Health Requirement of Swimming Pool and Public Bath ("Regulation 61")  in determining the relevant standard of care in Indonesia.
(10) The Superior Court found that Mr. Jonsi held bachelor and doctorate degrees in civil engineering and building construction from Indonesian universities, and had been employed in the design and construction of between five and six hundred swimming pools in Indonesia. The Superior Court then denied the Lees' motion to substitute an expert witness on swimming pool design and construction, holding Mr. Jonsi was not an expert on aquatic safety, but rather a civil engineer who designs pools and manages their construction.
(11) Choice renewed its motion for summary judgment on April 15, 2005. After two amendments by Choice and subsequent responses by Lee, the Superior Court granted summary judgment for Choice on June 5, 2009. It held that the Lees "failed to establish the existence of the standard of care applicable to the design, operation and/or maintenance of resort swimming pools in Indonesia." Without an applicable standard of care, the Superior Court held that the Lees were unable to maintain an action based upon negligence in general or negligence per se. Further, the Superior Court held that the Lees "failed to establish the existence or definition of a cause of action based upon an implied warranty of safety or fitness relative to the design, operation and/or maintenance of resort swimming pools in Indonesia on May 6, 2001." This appeal followed.
(12) We review de novo the Superior Court's decision to grant summary judgment.[3] Summary judgment is appropriate when, in viewing the record in the light most favorable to the nonmoving party, the movant has shown that there are no material issues of fact and that the movant is entitled to judgment as a matter of law.[4] The Superior Court's determination of foreign law is treated as a ruling on a question of law.[5] We review questions of law de novo.[6]
(13) The Lees contend that the Superior Court erred when it granted summary judgment for Choice because the Lees did not have an expert on the standard of care and proximate cause. Specifically, the Lees argue they could prove negligence, even without expert testimony because: (1) Choice had violated Regulation 61 that established a standard of care for a resort swimming pool operator in Indonesia constituting negligence per se; and (2) Choice's negligence was sufficiently obvious for a lay jury to ascertain without expert assistance. We agree that summary judgment was inappropriate because, when viewed in the light most favorable to the plaintiffs, the testimony of Mr. Sriro on Regulation 61 was sufficient to allow an inference of negligence per se.
(14) Delaware law is clear that a violation of a statute or ordinance enacted for the safety of others is negligence per se.[7] At issue here, however, is whether the concept of negligence per se is applicable under Indonesian law and, if so, whether Regulation 61 establishes the standard of care for pool owners and operators in Indonesia.
(15) The Superior Court held that Regulation 61 did not establish the standard of care for pool owners for three reasons: (1) the regulation does not specify to what it applies other than "swimming pools and public baths which constitute as part [sic] of public businesses;"(2) there is no definition as to the number of lifeguards, where they were to be located or the hours of their service; and (3) it lacks specificity where it references pool design, operation and/or maintenance.
(16) Regulation 61, in relevant part, provides:
HEALTH REQUIREMENTS FOR SWIMMING POOLS AND PUBLIC BATHS
CHAPTER III  MANAGEMENT AND PERSONNEL
. . .
Article 6
(1) Every swimming pool and public bath must employ lifeguard personnel and first aid personnel having the certificate legalized by the local Kadinkes.

. . .
ATTACHMENT
5. Building and sanitation facilities requirements
a. Area for swimming pool and public bath pool
 There must be a clear separator between the swimming pool area and other areas so that any unauthorized person would not be able to enter
. . .
 At a depth of less than 1.5 meters, the slope of the pool floor shall not exceed 10%, at a depth of more than 1.5 meters, the slope of the pool floor shall not exceed 30%.
. . .
 There must be clear signs to indicate the depth of the swimming pool and a separator for those who are able to swim and not able to swim.
. . .
(17) Mr. Sriro proffered an explanation concerning the standard of care under Regulation 61 and its application to the Quality Resort pool. But the Superior Court held that Mr. Sriro could not serve as an expert witness regarding "the standard of care or in any other area relevant to this litigation." Specifically, the Superior Court found Mr. Sriro's declarations lacking for three reasons. First, Mr. Sriro was not offered as an expert in swimming pool design, operation and maintenance. Second, Mr. Sriro did not demonstrate "experience, education or training in those areas, focusing instead on commercial and corporate matters." Mr. Sriro "enjoys no apparent distinction apart from a level of pre-litigation ignorance concerning the aforementioned standard of care in this area of the world." Third, Mr. Sriro's declarations are lacking in substance. The Superior Court noted that he conducted no research on and made no contact with any of the resorts in Indonesia similar to Waterfront City to determine the standard of care and/or how it was to be applied. The Superior Court also faulted Mr. Sriro for not referencing any judicial or administrative decisions in support of his conclusions.
(18) Mr. Sriro's declaration explained that he holds a license as a foreign advocate from the Department of Law and Human Rights of the Republic of Indonesia and is an active member of the California State Bar. Mr. Sriro is the author of Sriro's Desk Reference of Indonesian Law (Equinox Publishing), and has served since 1998 as Reviser of the Indonesian law chapter of Martindale-Hubbell's International Law Digest. Mr. Sriro declared he is fluent in the Indonesian language, and is familiar with a wide range of Indonesian legal matters. Concerning the application of Regulation 61 as the relevant standard of care, Mr. Sriro declared:
Regulation 061 requires, in part, that operators of public businesses with swimming pools take certain safety precautions in the design and operation of their pools including:
(a) the swimming pool operator must employ properly trained lifeguards (Article 6 of Exhibit B);
(b) at a depth of less than 1.5 meters, the slope of the pool floor shall not exceed 10% (Article 5 (a) point 7 of Attachment of Exhibit B);
(c) there must be signs indicating the depth of the pool, and separation marks to protect those who cannot swim (Article 5(a) point 12 of Attachment of Exhibit B).
(19) Mr. Sriro's declarations on their face reveal three specific obligations imposed by Regulation 61 upon operators of public businesses with swimming pools. As the Superior Court noted, Mr. Sriro was offered as an expert as an "authority on foreign law." The Lees sought to utilize Regulation 61 to establish the standard in Indonesia for negligence per se. Mr. Sriro was sufficiently qualified to offer testimony on this issue. Mr. Sriro explained that "[t]he standard of care applicable to an Indonesian tort claim would be determined with priority given to any applicable definitions set forth in regulations of law in effect." He then explained that Regulation 61 was "current, valid, in effect and applicable for the entire territory of the Republic of Indonesia" and "unequivocally establishes the relevant standard of care" in this case. Given Mr. Sriro's testimony and other testimony tending to show a violation of Regulation 61, we conclude that the Superior Court erred in granting summary judgment in favor of Choice.
(20) Next, Lee contends the Superior Court abused its discretion in excluding the expert testimony of Thomas Ebro. We review the Superior Court's decision to exclude expert testimony for abuse of discretion.[8]
(21) Delaware Rules of Evidence 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
(22) Lee contends that Mr. Ebro is well qualified under D.R.E. 702. Choice does not question Mr. Ebro's general qualification to testify as an expert in the field of aquatic safety based upon his education, training, or experience. Rather, its objection is that Mr. Ebro is not familiar with the appropriate standards of care applicable to resort pool operation in Indonesia. The Superior Court stated:
Mr. Ebro may be qualified to opine generally regarding aquatic safety, but his personal experience, training and education, as well as his investigation in this case thus far, do not qualify him to opine relative to the appropriate standard of care in that part of the world. Stated differently, the means used to reach his opinions as well as the opinions themselves are not reliable.
(23) The record shows that Mr. Ebro routinely reviews claims involving injuries sustained in connection with swimming pool accidents that occur in the United States, Canada, the Caribbean and Mexico. He has investigated and/or provided expert opinions in over 1,200 federal and state court cases. To support his testimony, Mr. Ebro traveled to Indonesia to examine the Quality Resort and eight other similarly situated resorts. Mr. Ebro also reviewed the facts and circumstances surrounding this incident. Based upon his experience and specialized knowledge obtained from his investigation, Mr. Ebro was sufficiently qualified to testify on whether the Quality Resort pool was in compliance with the standard of care in Indonesia, particularly Regulation 61. Any remaining challenge regarding Mr. Ebro's experience in Indonesia goes not to his qualification to testify, but rather to the weight of his testimony.[9]
(24) Lastly, the Lees contend that the Superior Court erred in denying leave to name a substitute expert on the relevant standard of care. Because we find merit to the Lees' second argument, this third contention is moot.
(25) The Lees have proffered sufficient evidence that the applicable standard of care in Indonesia on pool safety is established by Regulation 61 and that a violation of that regulation constitutes negligence per se. Further, Mr. Ebro was sufficiently qualified to testify on whether the Quality Resort pool was in compliance with this applicable standard of care. Accordingly, summary judgment is inappropriate on the record before us.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED and REMANDED for proceedings consistent with this Order.
NOTES
[1] The Superior Court held, and neither party contests, that the laws of the Republic of Indonesia apply to this case. Lee v. Choice Hotels International, Inc., 2006 WL 1148737 (Del. Super. Ct. Mar. 21, 2006).
[2] The Superior Court recognized that Mr. Sriro is licensed to practice law in the State of California and the Republic of Indonesia. When the motion to designate a substitute liability expert was decided, Mr. Sriro was employed as an attorney and "foreign advocate for an international law firm based in Jakarta, Indonesia. Mr. Sriro has also authored several publications concerning various aspects of Indonesian law. See, e.g., Andrew I. Sriro, Sriro's Desk Reference of Indonesian Law (2009).
[3] Acro Extrusion Corp v. Cunningham, 810 A.2d 345, 347 (Del. 2002); Dambro v. Meyer, 974 A.2d 121, 139 (Del. 2009).
[4] Id.
[5] D.R.E. 202(e).
[6] Dambro, 974 A.2d at 139.
[7] See Toll Bros., Inc. v. Considine, 706 A.2d 493, 497 (Del. 1998); Sammons v. Ridgeway, 293 A.2d 547. 549 (Del. 1972); Farrow v. Hoffecker, 79 A. 920, 921 (Del. 1906).
[8] M.G. Bancorporation, Inc. v. Le Beau, 737 A.2d 513, 522 (Del. 1999); General Motors Corp. v. Greiner, 2009 WL 2581722 (Del. Aug. 24, 2009). In Firestone Tire and Rubber Co. v. Adams, 541 A.2d 567, 570 (Del. 1998), we explained the abuse of discretion standard: "Judicial discretion is the exercise of judgment directed by conscience and reason, and when a court has not exceeded the bounds of reason in view of the circumstances and has not so ignored recognized rules of law or practice so as to produce injustice, its legal discretion has not been abused." (citations omitted).
[9] 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure Evidence § 6265 (1st ed. 2009)