# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JUSTIN O'NEAL,      )
     )
     Plaintiff,      )     C.A. No. N22C-03-226 MAA
     )
     v.      )
     )
ALLSTATE INSURANCE      )
COMPANY, A CORPORATION,      )
     )
     Defendant.      )

Submitted: June 5, 2023
Decided: July 21, 2023

*Upon Defendant's Motion for Summary Judgment*:
**GRANTED.**

## <u>MEMORANDUM OPINION</u>

Daulton V. Gregory, Esquire, (Argued) of MARIN & GREGORY LLC, Wilmington, Delaware, Attorney for Plaintiff.

Arthur D. Kuhl, Esquire, (Argued) of REGER RIZZO & DARNALL LLP, Newark, Delaware, Attorney for Defendant.

**Adams, J.**

1

**INTRODUCTION**

This case arises from an accident that occurred on May 17, 2021. A vehicle driven by Jeremiah Pyfrom ("Pyfrom") struck Plaintiff Justin O'Neal, a pedestrian, at the intersection of U.S. Route 40 and Wilton Boulevard in New Castle, Delaware. At the time of the accident, Plaintiff was crossing the eastbound lanes of U.S. Rt. 40 and Pyfrom was traveling in the right eastbound lane of Rt. 40.[1] Pyfrom's insurance carrier tendered their full liability policy limits of $25,000.[2] Plaintiff alleges that Pyfrom, an underinsured motorist, operated his vehicle in a manner that was both negligent and negligent per se.[3] At the time of the accident, Plaintiff was covered by an Allstate insurance policy.[4]

Allstate Insurance Company ("Defendant") denied underinsured motorist coverage resulting in this suit for same.[5] Defendant moved for summary judgment, asserting that there is no genuine issue of material fact that Pyfrom was not negligent and that, even if Pyfrom was negligent, his negligence was exceeded by Plaintiff's

---

[1] *See* Compl. ¶¶ 3-4; *see also infra* nn. 46-56 for a detailed review of camera footage from the accident. Joshua Aiken, one of the witnesses to the accident, had a Vava dashboard camera device installed in his car that made a partial recording of Plaintiff crossing the eastbound side of Rt. 40. This recording is identified as the "Dashboard Camera footage."
[2] *Id.* ¶ 8.
[3] *Id.* ¶¶ 13-19.
[4] *Id.* ¶ 11.
[5] *Id.* ¶ 21.

negligence when crossing the roadway.  For the reasons that follow, Defendant's motion for summary judgment is GRANTED.

**FACTS**

### I. Scene of the Accident

The accident occurred on May 17, 2021, around 8:30 PM at the intersection of Wilton Boulevard and U.S. Rt. 40 in New Castle, Delaware.[6]  On the westbound side of Rt. 40 at this location, there is a triangle-shaped traffic island at the northwest corner of the intersection.  A marked crosswalk traverses across Rt. 40 from the westbound to eastbound lanes.  The westbound side of Rt. 40 has two lanes for through traffic.  The east and westbound sides of Rt. 40 are separated by a grass partition.  The eastbound side of Rt. 40 has two left-turn only lanes and two lanes for through traffic.  The left-turn only lanes on the eastbound side are controlled by separate traffic signals from the through lanes.  The speed limit for this section of Rt. 40 is fifty miles per hour.[7] When the collision occurred between Pyfrom's vehicle and Plaintiff, Pyfrom was driving in the right through lane of eastbound Rt. 40[8] and

---

[6] *See* Compl. ¶¶ 3-4

[7] Deposition of Corporal Thomas Leonardi at 13:7-11 (June 1, 2023) (hereinafter "Leonardi Dep.").

[8] Collision Report at 4, Complaint No. 02-21-040280 (May 17, 2021) (Ex. E to Deposition of Thomas Leonardi) (hereinafter "Collison Report").

3

Plaintiff was running across the portion of the crosswalk that traverses the eastbound side of Rt. 40.[9]

## II. Plaintiff's Deposition Testimony[10]

Plaintiff testified that he was walking along Rt. 40, toward the intersection of Wilton Blvd. and Rt. 40.[11] Plaintiff was accompanied by three of his friends.[12] Plaintiff testified that he and his friends were walking along Rt. 40 and stopped at the triangle-shaped traffic island where cars could make a right-turn off of Wilton Blvd. onto Rt. 40.[13] At Plaintiff's deposition, defense counsel asked, "how long did you stay on that triangle area before you started to cross?"[14] Plaintiff testified in response, "till they said it was safe."[15] Defense counsel asked Plaintiff to identify who "they" referred to and Plaintiff testified, "my friends. They normally help me with crossing."[16] Plaintiff testified that when he was on the traffic island, he saw the light for Rt. 40 eastbound through traffic turn red,[17] that he saw cars coming to a stop in the eastbound through lanes,[18] and that this is when he proceeded into the

---

[9] Dashboard Camera footage.
[10] Unless otherwise noted, this section is derived from Plaintiff's deposition testimony.
[11] Deposition of Justin O'Neal at 26: 7-9 (Nov. 14, 2022) (hereinafter "Pl. Dep.").
[12] *Id.* at 21: 23-24.
[13] *Id.* at 26:1-9.
[14] *Id.* at 28: 11-13.
[15] *Id.* at 28: 14.
[16] *Id.* at 28: 15-17.
[17] *Id.* at 29: 7-15; 30: 1-3; 32: 21-24; 33: 1.
[18] *Id.* at 30: 5-15.

intersection.[19]  Plaintiff testified that when he reached the grass divide separating the westbound and eastbound lanes on Rt. 40 that he did not look to his right to see if there were any oncoming vehicles.[20]

Plaintiff testified that he did not remember any cars being stopped in the left-turn only lanes on the eastbound side of Rt. 40[21] and that he did not notice that the eastbound through lanes had green lights when he entered that side of Rt. 40.[22]  Two of Plaintiff's friends told him he was going to get hit, but his testimony regarding his location when this warning occurred varies.[23]  At one point Plaintiff testified that he had reached the right side of the left turn lanes and started running;[24] later in his deposition he testifies that he was between the left and right through lanes.[25]

Plaintiff testified that a car in the left through lane swerved in front of him and avoided striking him.  The driver of this vehicle was later identified as Joshua

---

[19] *Id.* at 33: 4-6.
[20] *Id.* at 40: 20-24; 41: 1-3.
[21] *Id.* at 31: 4-6. *Compare* Pl. Dep. at 31: 4-6 *with* nn. 64-65 and accompanying text. Vivek Rehil ("Rehil"), a witness interviewed by Corporal Leonardi, stated that he was sitting stationary on eastbound Rt. 40 in the left-turn only lane at a red left-turn signal and that the traffic light for the eastbound through lanes had a green light. Collision Report at 4.  Rehil stated that Plaintiff crossed diagonally through the intersection across Rt. 40. *Id.*
[22] *Id.* at 68: 24; 69: 1-3.
[23] *Id.* at 33: 19-21.
[24] *Id.* at 33: 15-24; 34: 1-7.
[25] *Id.* at 39: 1-8.

Aiken.[26] The vehicle driving in the right through lane struck him.[27] The driver of the vehicle that struck Plaintiff was later identified as Pyfrom's.[28] Plaintiff described the moment before the collision as follows: "the light was red and I started walking. From what I see, out of nowhere it just turned green on me. And then I tried to take off on the road to get through it. Like it was red, and then it was green when I was halfway through. Like I was in the middle, and I just ran."[29] Plaintiff testified that he did not look for oncoming traffic before entering into the through lanes because when his friends told him to run he just ran.[30] Plaintiff did not see that there were vehicles in both eastbound lanes approaching the intersection.[31] Plaintiff testified that the two vehicles that approached him in the two through lanes had the right of way.[32]

---

[26] *See infra* nn. 34-44 and accompanying text for a discussion of Joshua Aiken's testimony.
[27] *Id.* at 36: 5-10.
[28] *Id.* ¶ 4.
[29] Pl. Dep. at 21:23-24; 22:1-7.
[30] *Id.* at 36: 22-24.
[31] *Id.* at 36: 15-18.
[32] Pl. Dep. at 71: 2-5.

## III. Witness Joshua Aiken's Deposition Testimony[33]

Joshua Aiken ("Aiken") was driving in the left eastbound through lane on Rt. 40 when the accident occurred.[34] Aiken's vehicle contained a Vava brand dashboard camera device that made a partial recording of Plaintiff crossing the eastbound side of Rt. 40.[35] This footage is discussed in detail in the proceeding subsection. Aiken testified that as he was approaching the intersection, the lights for eastbound through traffic had been green for "easily 15 seconds."[36] When asked whether he remembered it turning from red to green he testified that "it was green the whole time" and that he never saw it any other color than green.[37] Aiken testified that he had no warning that Plaintiff was going to run out in front of him.[38] Aiken recalled "seeing him [Plaintiff] cross the highway from the other side . . . he [Plaintiff] disappeared in front of the two black cars, and then he flashed in front of me as he tried to run across."[39] The "two black cars" Aiken referenced were stopped in the two left-turn only lanes.[40] Aiken also testified that, from his view, his vehicle would

---

[33] Unless otherwise noted, this section is derived from Joshua Aiken's deposition testimony.

[34] Deposition of Joshua Aiken at 5: 14-23 (Nov. 14, 2022) (hereinafter "Aiken Dep.").

[35] *Id.* at 7: 2-5.

[36] *Id.* at 19: 7.

[37] *Id.* at 19: 10-18.

[38] *Id.* at 20: 2-5.

[39] *Id.* at 16: 7-19.

[40] Dashboard Camera footage.

have blocked Pyfrom's view, who was proceeding in the adjacent right lane and slightly behind Aiken's vehicle.[41] Aiken estimated he was about two car lengths away from Plaintiff when Plaintiff began to enter Aiken's lane and that it felt like half a second elapsed between the time he saw Plaintiff and when Aiken swerved to avoid hitting Plaintiff.[42] Aiken testified that his vehicle would have likely struck Plaintiff if he had not swerved.[43] Both Aiken and Pyfrom returned to the scene shortly after the accident.[44]

## IV. Dashboard Camera Footage[45]

At the time of the accident, Aiken had installed in his vehicle a Vava brand dashboard camera, which had forward-facing and rear-facing cameras.[46] Aiken's dashboard camera made a clear, real-time audiovisual recording of his vehicle driving through the intersection during the accident between Plaintiff and Pyfrom.[47] The device simultaneously captures the road in front of and behind the vehicle and

---

[41] *Id.* at 20: 11-15.
[42] *Id.* at 21: 6-20.
[43] *Id.* at 22: 4-9.
[44] *Id.* at 23: 13.
[45] Unless otherwise noted, this subsection is derived from a viewing of the Dashboard Camera footage. Exhibit C to Defendant's motion for summary judgment also contains still frames of the video. The Dashboard Camera footage was not filed contemporaneously with the motion. Upon the Court's request, Defendant supplied an electronic version of the video after the Court heard argument on the motion.
[46] Aiken Dep. at 7.
[47] Dashboard Camera footage; *see* Aiken Dep. at 7: 2-5.

records at thirty frames per second.[48]  The forward-facing video faces through the front windshield of the vehicle.[49]  The rear-facing camera faces through the rear windshield of the vehicle.[50]  This technology records videos in discrete segments that the owner can download and save from the corresponding application.[51]  The camera records the driver's speed in miles per hour.[52]  The bottom left of the recording shows the driver's current speed, the date, and time of day.[53]  The recording under review begins approximately one second before the accident and is thirty-six seconds in length.  The date at the beginning of the recording is "2021/5/17" and the time is "8:30:34 PM."  The rate of speed at the beginning of the video is "43 mph."

At the beginning of the video, Aiken's vehicle is driving in the left eastbound lane on Rt. 40, approaching the intersection with Wilton Blvd.  The first frame of the video clearly shows that one car is stopped in each of the left-turn only lanes on eastbound Rt. 40.  The time at the beginning of the video is recorded as "8:30:34 PM" and the time when Aiken's vehicle reaches the intersection is recorded as "8:30:34 PM," indicating that less than one second elapsed.  At the start of the video,

---

[48] Expert report at 6.
[49] *Id.*
[50] *Id.*
[51] Aiken Dep. at 12: 24; 13: 1-6.
[52] *Id.*
[53] *Id.*

Aiken's vehicle is driving at forty-three miles per hour and by the time he reaches the intersection, the recorded speed is forty-four miles per hour. Defendant's expert, Abraham Warfel, calculated that Aiken's vehicle traveled a distance of approximately fifty feet from the start of the video to the moment the vehicle reached the crosswalk.[54]

From the beginning of the recording, the traffic signals for the left-turn-only lanes are red and the two traffic signals immediately to the right which regulate the east bound lanes are green. At the beginning of the video, a pedestrian wearing a white shirt, later identified as Plaintiff, is depicted directly beneath the right left-turn only signal crossing over the right left-turn only lane. As Aiken's vehicle reaches the intersection, his vehicle quickly swerves to the left. By the time Aiken's vehicle reaches the intersection, it appears that Plaintiff is approximately midway between the eastbound lanes. After Aiken's vehicle has swerved to the left and Plaintiff is no longer visible in the frame, there is an audible thud. The remainder of the video shows Aiken and Pyfrom's vehicles pulling over to the right shoulder of the road, and Pyfrom exiting his vehicle.[55] The rear-facing video footage shows a car with its

---

[54] Expert report at 8. Defendant's expert calculated the distance between the location of Aiken's vehicle at the start of the video to the crosswalk applying the following mathematical formula: distance = velocity x time. *Id.* Defendant's expert estimated that Aiken's vehicle was approximately fifty feet from the intersection at the beginning of the recording. *Id.* The Court does not rely on the expert report for its decision; it is merely cited for context. *See infra* n. 69.

[55] Aiken Dep. at 23: 6-12.

headlights on in the right eastbound lane behind Aiken's vehicle. This vehicle is later identified as Pyfrom's vehicle.[56]

## V. Collision Report and Corporal Thomas Leonardi's Deposition

Corporal Thomas Leonardi ("Leonardi") of the Delaware State Police arrived at the scene shortly after the accident and made a Collision Report.[57] The report lists three witnesses: Joshua Aiken, Vivek Rehil ("Rehil"), a witness whose vehicle was idling in the left-turn only lane of westbound Rt. 40, and Skylar Ellingsworth ("Ellingsworth"), one of Plaintiff's friends who was walking with him.[58] Leonardi testified that Pyfrom said he was traveling at approximately forty-five miles per hour in the right eastbound lane of Rt. 40 and that he had a green light.[59] Aiken told Leonardi that he was traveling in the left eastbound lane on Rt. 40, that he was traveling about forty-five miles per hour, and that he observed Pyfrom's vehicle to the right traveling at approximately the same rate of speed.[60] Aiken indicated to Leonardi that he successfully swerved to avoid striking Plaintiff, but that Pyfrom's

---

[56] Plaintiff does not dispute that the vehicle identified in the rear camera footage is Pyfrom's vehicle. In the approximate one second that elapses from the beginning of the rear camera footage, the distance between the two vehicles decreases. Expert report at 11. Based on the lapse of time and decrease in distance between the vehicle, Defendant's expert infers that Pyfrom's vehicle was travelling at approximately forty-eight miles per hour as it approached the crosswalk. *Id.*
[57] Collision Report.
[58] *Id.*
[59] *Id.*; Leonardi Dep. at 12: 23-24; 13.
[60] Collision Report; Leonardi Dep. at 15: 14-19.

vehicle struck Plaintiff.[61]  Ellingsworth indicated to Leonardi that Plaintiff crossed eastbound Rt. 40 diagonally outside of the crosswalk and was struck by a vehicle.[62] Ellingsworth also indicated that  she "attempted to tell [Plaintiff] to stop but he did not listen to her."[63]  Rehil stated his car was stopped in one of the left-turn only lanes on eastbound Rt. 40, and that the left turn lanes of traffic had the red arrow signal.[64] Rehil stated that the traffic lights for through traffic on eastbound Rt. 40 had the green signal and that Plaintiff crossed diagonally through the intersection across Rt. 40.[65]

Leonardi testified that he did not think the light for eastbound through traffic had switched from red to green when Plaintiff was already in the crosswalk because "traffic was already moving at 45 miles an hour" according to witness statements and that he presumed they would be traveling at a lower speed if the light had been red.[66]  Leonardi cited Plaintiff for not carrying a light on a roadway and crossing outside of a crosswalk.[67]

---

[61] Collision Report; Leonardi Dep. at 15: 22-24. Leonardi testified that Pyfrom did not violate any rules of the road (Leonardi Dep. at 18: 8-9) and that Plaintiff had the duty to yield to oncoming traffic (Leonardi Dep. at 20: 4-5).
[62] Collision Report; Leonardi Dep. at 15: 1-6.
[63] Collision Report; *see also* Leonardi Dep. at 15: 9-11.
[64] Collision Report; Leonardi Dep. at 13: 1-4.
[65] Leonardi Dep. at 14: 5-8, 16-17.
[66] Leonardi Dep. at 23: 19-24; 24: 3-9.
[67] ;Collision Report Leonardi Dep. at 18: 22-24.

## VI.  Defendant's Accident Reconstruction Expert Report

Defendant hired an accident reconstruction expert, Abraham Warfel, to investigate the collision and draw conclusions to a reasonable degree of probability as to what occurred.  Warfel's report is attached as Exhibit E to the motion for summary judgment.[68]  Plaintiff filed a *Daubert* motion to exclude Defendant's Expert's testimony at trial.[69]

## CONTENTIONS OF THE PARTIES

Plaintiff alleges that Pyfrom's operation of his vehicle constitutes common law negligence and negligence per se.[70]  With respect to Plaintiff's claim of common law negligence, Plaintiff alleges Pyfrom drove in a manner that was unreasonable, inattentive, and careless; that Pyfrom failed to exercise and maintain proper control of his vehicle,[71] and that his conduct created a sudden emergency.[72]  With respect to Plaintiff's claim of negligence per se, Plaintiff alleges Pyfrom violated the following

---

[68] *O'Neal v. Allstate Ins. Co.,* C.A. No. N22C-03-226 (MAA), Adams, J., Transaction ID 69147676 (Feb. 14, 2023).

[69] *O'Neal v. Allstate Ins. Co.,* C.A. No. N22C-03-226 (MAA), Adams, J., Transaction ID 70146599 (June 6, 2023). As discussed herein, the Court is granting Defendant's motion for summary judgment. This decision does not rely on the expert's report. Even in the absence of the expert report, Defendant has shown that there is no genuine issue of material fact that Plaintiff's negligence exceeded Pyfrom's. This decision is a final resolution of Plaintiff's claim and moots the pending *Daubert* motion.

[70] Compl. ¶¶ 13, 15-18.

[71] *Id.* ¶ 18.

[72] *Id.*

sections of Title 21: § 4144 (Drivers to exercise due care), § 4175(a) (reckless driving), and § 4176(a) and (b) (careless and inattentive driving).[73] Defendant asserts in its motion that there is no genuine issue of material fact that Plaintiff's negligence exceeded any negligence on the part of Pyfrom.[74]

## STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.[75] When considering a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party.[76] "If a defendant, as the moving party, can establish that there is no genuine issue of material fact, and the defendant is entitled to judgment as a matter of law, the burden will shift to the plaintiff to show the existence of specific facts to support the plaintiff's claim."[77] "Where the moving party produces an affidavit or other evidence sufficient under Superior Court Civil Rule 56 in support of its motion and the burden

---

[73] In the complaint, Plaintiff alleges Pyfrom was negligent per se for violating 21 *Del. C.* §§ 4175 and 4176. Plaintiff also alleges that Pyfrom violated 21 *Del. C.* § 4144 in his response to Defendant's motion for summary judgment.

[74] Def. Mot. Summ. J. at 3-6.

[75] Super. Ct. Civ. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[76] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[77] *Singletary v. American Indep. Ins. Co.*, 2011 WL 607017, at *1 (Del. Super. Jan. 31, 2011).

shifts, then the non-moving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact for trial."[78]

"Not all disputes of fact will defeat a motion for summary judgment."[79] If the moving party manages to shift the burden, the nonmoving party must establish a *genuine* issue of material fact.[80] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury reasonably could find for the plaintiff.'"[81] A genuine issue of material fact arises when "any rational trier of fact could infer that [the plaintiff has] proven the elements of prima facie case by clear and convincing evidence."[82]

As a general matter, "negligence cases are not susceptible to summary judgment"[83] because the movant must "show not only that there are no conflicts in the factual contentions of the parties[,] but[,] that, also, the only reasonable inference[s] to be drawn from the uncontested facts are adverse to the plaintiff."[84] Determining how much, if any, negligence should be attributed to each party

---

[78] *Taylor v. Green Acre Farm, Inc.,* 2018 WL 2128663, at *1 (Del. Super. May 7, 2018); *Salah & Pecci Leasing Co., Inc. v. GBC Christina Landing, LLC,* 2008 WL 2690283, at *2 (Del. Super. June 5, 2008).
[79] *In re Asbestos Litigation*, 2012 WL 1413673, at *2 (Del. Super. Feb. 2, 2012) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986)).
[80] Super. Ct. Civ. R. 56.
[81] *Anderson*, 477 U.S. at 252.
[82] *Cerebus Intl. LTD. v. Apollo Mgmt., L.P*., 794 A.2d 1141, 1149 (Del. 2002).
[83] *Durnan v. Butler,* 2004 WL 1790117, at *5 (Del. Super. July 21, 2004).
[84] *Lugaro v. Guercio,* 2022 WL 1112288, at *3 (Del. Super. Apr. 12, 2022) (quoting *Buchanan v. TD Bank, N.A.,* 2016 WL 3621102, at *2 (Del. Super. June 28, 2016)).

pursuant to Delaware's comparative negligence statute "almost always presents a question of fact for the jury."[85]  Delaware courts have, however, on rare occasion decided issues of comparative negligence as a matter of law after the plaintiff's presentation of their case at trial.[86]  This case, because of the undisputed and clear video footage of the accident, is one of those rare cases where summary judgment is appropriate.

## ANALYSIS

For Plaintiff to succeed on his claim of common law negligence, he must make a prima facie showing of duty, breach, proximate causation, and damages.[87]  To establish negligence per se, Plaintiff must establish that "a standard of conduct exists to protect the class of which plaintiff is a member; defendant is required to conform to that standard of conduct; and the defendant did not so conform."[88]  Pursuant to

---

[85] *Pagano v. Stradley,* 2017 WL 2691189, at *2 (Del. Super. June 21, 2017) (quoting *Helm v. 206 Massachusetts Avenue, LLC*, 107 A.3d 1074, 1081 (Del. 2014)) (citing *Trievel v. Sabo*, 714 A.2d 742, 745 (Del. 1998)).

[86] *See e.g. Hudson v. Old Guard Ins. Co.,* 3 A.3d 246, 250 (Del. 2010); *Trievel*, 714 A.2d at 745.

[87] *Hudson,* 3 A.3d at 250.

[88] *McCain v. Council on Real Estate Appraisers,* 2009 WL 1515594, at *3 (Del. Super. May 29, 2009); *see also Tydings v. Loewenstein,* 505 A.2d 443, 446 (Del. 1986).  Some decisions list four elements for negligence per se: "(1) that the statute was 'enacted for the safety of others;' (2) that a causal connection exists between the statutory violations and the injury, and that Plaintiff was 'a member of the class of persons the statute set out to protect;' (3) that the statute set forth 'a standard of conduct which was designed to avoid the harm' suffered; and (4) that the defendant violated the statute 'by failing to comply with that standard of conduct.'" *Cunningham v. Kentmere Rehabilitation and Healthcare Center, Inc.,* 2021 WL

established Delaware law, "a violation of a statute or ordinance enacted for the safety of others is negligence per se."[89]

Defendant makes two primary assertions in its motion for summary judgment: (1) that Pyfrom did not breach his duty to operate his vehicle in a reasonable and prudent manner; and (2) that Plaintiff was negligent when he entered into the eastbound lanes of Rt. 40 in front of oncoming traffic. Defendant argues that Plaintiff's claim is therefore barred by Delaware's modified comparative negligence statute.[90] This motion, therefore, presents two complimentary questions: (1) Was Plaintiff acting negligently when he entered into the eastbound portion of the crosswalk and, if so, did his negligence exceed that of Pyfrom's? (2) Was Pyfrom negligent in operating his vehicle when he entered into the Wilton Blvd-Rt. 40 intersection, striking Plaintiff and, if so, did Pyfrom's negligence exceed that of Plaintiff's?

The parties argue that the following factual question is dispositive of Defendant's motion: was the traffic signal for through traffic on eastbound Rt. 40 red or green at the moment when Plaintiff entered the eastbound side of Rt. 40? Plaintiff alleges that the light was red, giving him the right of way at the moment he

---

1157991, at *4 (Del. Super. Mar. 25, 2021) (quoting *NVF Co. v. Garrett Snuff Mills, Inc.,* 2002 WL 130536, at *2 (Del. Super. Jan. 30, 2002)).

[89] *Chan Young Lee v. Choice Hotels Intern., Inc.,* 992 A.2d 1236 (TABLE), 2010 WL 1730674, at *3 (Del. 2010) (internal citations omitted).

[90] 10 *Del. C.* § 8132.

entered and that when it turned green midway through, any vehicles in the eastbound lanes had a duty to yield the right of way to him.[91] Defendant alleges that, before Plaintiff entered the eastbound side of Rt. 40, the light was green and that, therefore, Plaintiff was never lawfully on that portion of the crosswalk and crossed the eastbound lanes against the traffic signal in front of oncoming traffic. Thankfully, Aiken's dashcam video footage erases any dispute of fact and guides the Court's decision here.

## I.    Delaware's Modified Comparative Negligence Statute

Pursuant to Delaware's modified comparative negligence statute, for negligence actions which result in death or injury, a plaintiff's contributory negligence shall not bar recovery "where such negligence was not greater than the negligence of the defendant" . . . "but any damages awarded shall be diminished in proportion to the amount of negligence attributed to the plaintiff."[92] If, however, the plaintiff's contributory negligence is 51% or greater, a plaintiff is barred completely

---

[91] Plaintiff also argues in his response to the motion that he had the right of way pursuant to 21 *Del. C.* § 4142(a) because "[t]here were no crosswalk signs or pedestrian traffic-control signals" and Plaintiff was "halfway across the crosswalk." Pl. Resp. to Mot. Summ. J. at 4. Plaintiff's assertion is incorrect. This statute only applies "[w]hen traffic-control signals are not in place or not in operation or when the operator of a vehicle is making a turn at an intersection." 21 *Del. C.* § 4142(a). Neither of these conditions were present in this case. Traffic control signals were in place and in operation at the time of the accident and Pyfrom was proceeding straight ahead in the eastbound lane.

[92] 10 *Del. C.* § 8132.

from recovering.[93] Excepting those rare circumstances where injury occurs in the absence of either party's negligence, it logically follows that where one party has committed no negligence, the party's negligence is exceeded by the other party's negligence.

## II.     Duties of Pedestrians and Operators of Motor Vehicles

Pedestrians are required to obey traffic control devices[94] and shall not "suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute an immediate hazard."[95] Pedestrians are prohibited from walking on any motorway beyond "the corporate limits of any city or town" without a "light or reflector type device during the period of time from sunset to sunrise and at any other time when there is not sufficient light to render clearly visible any person or vehicle on the highway."[96]

Drivers are required to drive at a reasonable speed,"[97] "exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by

---

[93] *Helm v. 206 Massachusetts Avenue, LLC,* 107 A.3d 1074, 1079 (Del. 2014) (citing *Culver v. Bennett*, 588 A.2d 1094, 1098 (Del.1991)).

[94] 21 *Del. C.* § 4141(b). Section 4141(b) specifies that pedestrians are subject to traffic control devices listed in § 4108: "Whenever traffic is controlled by official traffic-control signals showing different colored circular lights" . . . "such lights . . . shall . . . apply to drivers of vehicles, operators of bicycles and *pedestrians*." *Id.* (emphasis added).

[95] *Id.* § 4142(b).

[96] *Id.* § 4148.

[97] *Hudson v. Old Guard Ins. Co.,* 3 A.3d 246, 250 (Del. 2010) (internal citations omitted).

sounding the horn when necessary."[98]  In those cases aptly identified as "dart out" cases, where a pedestrian or cyclist suddenly enters the roadway with minimal or no warning,[99] "Delaware applies the common law rule that no one has a duty to anticipate another's negligence.  Rather, we hold individuals responsible for reasonably foreseeable events . . ."[100] "Motorists . . . need not slow down in anticipation of danger that has not yet become apparent."[101] "Dart out" cases, where an individuals commits an act that is not reasonably foreseeable, often results in an unavoidable accident.  "An unavoidable accident is one which was not caused in any degree by the want of care or skill which the law requires of one under the circumstances of the particular case.  This does not necessarily mean that such an accident must have been physically impossible under the circumstances for defendant to have prevented, but only that defendant exercise care and prudence which the law holds every person bound to exercise."[102]

## III.   Plaintiff's negligence exceeded Pyfrom's negligence.

For the reasons that follow, the Court finds that there is no genuine issue of material fact that Plaintiff's negligence exceeded that of Pyfrom's, and that

---

[98] 21 *Del. C.* § 4144.

[99] *See, e.g., Hudson,* 3 A.3d at 248-250; *Dietz v. Mead*, 160 A.2d 372, 373 (Del. 1960).

[100] *Hudson,* 3 A.3d at 250 (internal citations omitted).

[101] *Id.* at 251.

[102] *Dietz,* 160 A.2d at 375 (internal citations omitted)*; see* Prosser on Torts, § 29.

Plaintiff's claim is therefore barred by Delaware's modified comparative negligence statute. The Court relies primarily on the dashboard camera footage as it is sufficient to establish the parties' comparative negligence. This decision does not rely on the expert report.

### A. The dashboard camera footage establishes the light was green.

The fact that the parties take opposing views on the color of the light does not present a genuine issue of material fact to defeat Defendant's motion. The dashboard camera footage and testimony establishes there is no genuine issue of material fact, in fact there can be no dispute at all, that the light was green for eastbound through traffic when Plaintiff entered the intersection and that he was therefore negligent in doing so.

Plaintiff's testimony that the light was red is contradicted by the weight of the evidence Defendant submitted; most importantly, the dashboard camera footage. The Court gives great weight to the dashboard camera evidence because it does not present those perennial issues of reliability, accuracy, and potential bias of evidence that depends upon a person's memory, like testimony and sworn statements. The dashboard camera recording provides an objective contemporaneous recording of the scene the moment before Pyfrom's vehicle struck Plaintiff.[103]

---

[103] The Court notes Plaintiff has not contested that Aiken, the operator of the vehicle which contained the dashboard camera, was in any way motivated or biased in favor of Pyfrom and/or against Plaintiff. Plaintiff has also not contested that the video was

At the beginning of the recording, Plaintiff has already crossed over the median and is crossing through the right left-turn only lane. As stated above, the dashboard camera device records the rate of speed in miles per hour, and also indicates the time of day to the nearest second. As reviewed above, the beginning of the recording shows that the light is green and that Aiken's vehicle is travelling at forty-three miles per hour. Less than one second elapses between the beginning of the recording and the moment when Aiken's vehicle reaches the crosswalk. There is no need to rely on the Expert's calculation of the distance between Aiken's vehicle at the beginning of the recording and the intersection to determine that his vehicle was no more than a few car lengths from the intersection. The rear-facing camera in Aiken's vehicle shows that Pyfrom's vehicle is approximately one to two car lengths behind and to the right of Aiken's vehicle. To summarize, Aiken's and Pyfrom's vehicles were traveling at around forty-three miles per hour at a short distance from the intersection.

The Court finds that Plaintiff's version of events does not create a genuine issue of material fact as to when the light turned green. Plaintiff's position speculates

in any way altered to prejudice Plaintiff's interests in this action. During a chance encounter between Aiken and Plaintiff that occurred at Aiken's workplace at which time they learned of each other's involvement in the accident, Aiken voluntarily provided the Dashboard Camera footage to Plaintiff. Aiken Dep. at 10: 11-24; 11: 23-24; 12: 6-7. In addition, after a thorough review of the evidence in this case, the Court finds no evidence to undermine the authenticity or reliability of this video.

a high degree of negligence on the part both Aiken and Pyfrom devoid of support. Aside from Plaintiff's own testimony, his position finds no support from the balance of the record and is contradicted by it. To defeat Defendant's motion for summary judgment, Plaintiff would have had to present credible evidence supporting his assertion that the light was red when he entered the intersection. Plaintiff has not done so. On the other hand, Defendant has provided substantial evidence to establish that the light was green when Plaintiff entered the intersection. For example, aside from the dashboard camera footage, Aiken testified that the light for eastbound through traffic was green for approximately fifteen seconds prior to his vehicle reaching the intersection.[104]

Because there is no genuine issue of material fact that the light was green when Plaintiff entered the intersection, it follows that when Plaintiff entered into the crosswalk on the eastbound side of Rt. 40 directly in front of oncoming traffic that this was negligent and in violation of 21 *Del. C.* §§ 4141(b) and 4142(b). Plaintiff was also negligent for crossing Rt. 40 after night fall without carrying a light or reflector type device, in violation of 21 *Del. C.* § 4148.[105] The accident occurred at 8:30 at night in the month of May and the camera footage clearly shows that Plaintiff

---

[104] Aiken Dep. at 19: 7.
[105] *See supra* n. 96 and accompanying text.

was on the roadway after nightfall.[106] Corporal Leonardi cited Plaintiff for violating

this statute.[107] Plaintiff has not contested that he violated this statute.

### B. Plaintiff's action created an unavoidable accident not caused by any negligence of Pyfrom's.

This case falls within the category of "dart out" cases which result in

unavoidable accidents. Plaintiff attempted to run across the eastbound through lanes

of Rt. 40, which has a posted speed limit of fifty miles per hour, directly in front of

oncoming traffic, after night fall, without a light or reflector device. Based on

Pyfrom's rate of speed and approximate distance from the intersection at the moment

when Plaintiff attempted to run across, approximately one second elapsed, leaving

Pyfrom inadequate time to react and avoid a collision.[108] This was not a reasonably

foreseeable event and resulted in an unavoidable accident not caused by any "want

of care or skill" on the part of Pyfrom.[109] Pyfrom had no reason to expect that a

reasonable adult would enter the roadway directly in front of his vehicle[110] and had

no time to slow down in anticipation of the danger.[111]

---

[106] *See generally* Dashboard Camera footage.
[107] Collision Report; Leonardi Dep. at 18: 22-24.
[108] *See* Collision Report at 4 ("he [Pyfrom] attempted to avoid collision but he was unable to avoid collision.").
[109] *See Dietz v. Mead*, 160 A.2d 372, 375 (Del. 1960) (internal citations omitted).
[110] *See Hudson v. Old Guard Ins. Co.,* 3 A.3d 246, 250-251 (Del. 2010).
[111] *See id.* at 251.

Plaintiff asserts that Pyfrom must have been negligent because Aiken, unlike Pyfrom, successfully swerved to avoid Plaintiff. The fact that it may have been theoretically possible for Pyfrom to avoid the accident, however, does not mean that he was negligent.[112] For an accident to qualify as unavoidable, it need not have been "physically impossible" to avoid.[113] If Pyfrom was unable to avoid the collision while exercising the care and prudence of a reasonable person, the accident was unavoidable.[114] The fact that Aiken nearly missed striking Plaintiff does not bear on the question of Pyfrom's negligence. Plaintiff has raised no other fact indicating Pyfrom was negligent.

To the contrary, all of the evidence points to the conclusion that Pyfrom was driving in compliance with 21 *Del. C.* § 4144. Pyfrom was driving below the posted speed limit[115] in the middle of his lane of travel as a reasonable and prudent person would under the circumstances. The witnesses to the accident—Ellingsworth, Rehil, and Aiken— all of whom made contemporaneous statements to Corporal Leonardi, did not implicate Pyfrom in any manner.[116] Neither Plaintiff nor any witness asserts

---

[112] *Id.*

[113] *Dietz v. Mead*, 160 A.2d 372, 375 (Del. 1960).

[114] *Id.*

[115] Dashboard Camera footage; Collision Report (Pyfrom stated he was driving approximately forty-five miles per hour and was not cited for any traffic citations.); Aiken Dep. at 17: 17-18 (Q: "Could tell *whether* that other vehicle [Pyfrom's vehicle] was staying with you, going faster, or slower?" A: "He was matching my speed.").

[116] *See generally* Collision Report at 4.

that Pyfrom was driving in excess of the speed limit and there is no evidence of same. Aiken also testified that he estimated Pyfrom's vehicle to be driving at the same approximate rate of speed as his own, which was about forty-three miles per hour.[117] Leonardi testified that Pyfrom did not violate any rules of the road.[118]

Moreover, Plaintiff has not raised any facts to rebut Defendant's contention that Pyfrom's view of Plaintiff was occluded before Plaintiff entered Pyfrom's lane of travel. The front-facing camera footage shows that Plaintiff entered into the eastbound through lanes in front of the two cars idling in the left-turn only lanes, at least partially occluding him from view of vehicles approaching the intersection in the eastbound lanes.[119] The rear-facing camera footage along with Aiken's testimony, establishes that Aiken's vehicle would have at least partially occluded Pyfrom's view of Plaintiff as he crossed from the left to right eastbound through lanes, leaving Pyfrom with even less time than Aiken, if any, to avoid a collision with Plaintiff.[120]

The facts of this case are similar to those in *Trievel v. Sabo.*[121] In *Trievel*, the plaintiff, a bicyclist, attempted to cross Rt. 1 North, a busy four-lane highway, where

---

[117] *Supra* n. 115 and accompanying text.
[118] Leonardi Dep. at 18: 8-9.
[119] Dashboard Camera footage; Aiken Dep. at 18: 19-21. Aiken testified that Plaintiff "disappeared behind" the two cars stopped in the left-turn only lanes before suddenly entering into his lane. *Id.*
[120] Dashboard Camera footage; Aiken Dep. at 20: 11-15.
[121] 714 A.2d 742 (Del. 1998).

it intersected with Rt. 273.[122]   There was a blinking yellow traffic signal at this intersection for vehicles traveling on Rt. 1 North. [123]   The Plaintiff entered into the intersection directly in front of an oncoming truck, which struck her, resulting in her death.[124]   The defendant moved for a judgment of law after the plaintiff presented her case in chief.[125]   The trial court granted the motion, which was affirmed on appeal.[126]   The Supreme Court of Delaware found that *Trievel* was one of those rare cases where the trial court could find that the plaintiff's negligence exceeded that of the defendant's as a matter of law.[127]

As in *Trievel,* where the plaintiff failed to maintain a proper lookout or take adequate care for her own safety when crossing into a busy four-lane highway, here, Plaintiff similarly failed to maintain a proper lookout or take timely notice of the traffic signals when he entered into the eastbound through lanes, directly in front of Aiken's and Pyfrom's vehicles.[128]   "Faced with plainly visible oncoming traffic that presented a visible hazard to pedestrians[,]" Plaintiff, like the cyclist in *Trievel,* "was under an affirmative obligation to see and appreciate the hazard and to proceed in a

---

[122] *Id.* at 743.
[123] *Id.*
[124] *Id.*
[125] *Id.* at 744.
[126] *Id.* at 743.
[127] *Id.* at 745.
[128] *Id.*

careful and intelligent manner."[129]  Although the trial court in *Trievel* had the benefit of considering plaintiff's case in chief, there was no video evidence of the moment before the accident or testimony from the plaintiff-victim as there is here.  As detailed above, the dashboard camera evidence is critical to establishing that there is no genuine issue of material fact Plaintiff was negligent and that Pyfrom was not.

## CONCLUSION

The Court finds that there is no genuine issue of material fact that Plaintiff was negligent when he crossed into the eastbound side of Rt. 40 and that Pyfrom was not acting in a negligent manner when operating his vehicle.  Because Plaintiff's negligence exceeds that of Pyfrom's, his action is barred by 10 *Del. C.* § 8132 and Defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment is GRANTED and Plaintiff's claim for uninsured motorist benefits is DENIED.

IT IS SO ORDERED.

*/s/ Meghan A. Adams*

**Meghan A. Adams, Judge**

---

[129] *Id.*