Mark R. HOUSE, by his Next Friend, Theodore E. House and Theodore E. House, Individually, Plaintiffs Below, Appellants,

v.

Paul LAURITZEN, Defendant Below, Appellee.

Supreme Court of Delaware.

Dec. 8, 1967.

Oliver V. Suddard and Richard Allen Paul, Wise & Suddard, Wilmington, for appellants.

William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice.

This appeal filed by Mark R. House, by his next friend, and his father, Theodore E. House, plaintiffs-below, attacks a judgment of the Superior Court entered upon a jury verdict in favor of the defendant-below, Paul Lauritzen. Appellants contend that the charge to the jury was incorrect and inadequate in several respects.

The action was brought to obtain damages resulting from an accident in which Mark R. House (Mark) received personal injuries. The event took place on a clear day in August 1964 about 4:30 P.M. The defendant (Lauritzen), accompanied by his wife, was driving his car through a residential area on Edgewood Road in Alapocas. Mark, who was seven years old in 1964, testified that he and a playmate were riding their bicycles up and down and across the street, and that he started to cross to the opposite side when the car hit him. He also testified that, although his father had previously cautioned him to stop and look for cars before crossing the street, he did not do so this time; in fact, he never saw the car.

Lauritzen testified that he saw the boys from the time he entered Edgewood Road a block or more away from the point of impact; that he was driving on the right side of the street at 15 to 20 miles per hour as he approached them; that Mark was riding on the opposite side of the street and gave no indication of turning from his course; that, although he saw that Mark was not looking, he did not sound his horn, thinking that it might startle the boy and cause him to fall; that, when he was almost even with Mark, the latter suddenly turned directly in front of the car, whereupon Lauritzen immediately stopped, and Mark ran into the front part of the car.

The criticisms now made against the Court's charge are ten in number and will be considered seriatim.

1. The Court below declined to charge on the duty of motorists in a residential area to anticipate the presence of children in the street. We think the Court was correct. Unlike the situation in Pokoyski v. McDermott, 3 Storey 253, 167 A.2d 742, this defendant actually saw Mark at least a block away; the accident did not occur because of any failure to anticipate his presence. This prayer was properly denied.

2, 3, 4, 5. The Court below discussed the various charges of negligence levelled against Lauritzen. Appellants complain that these sections did not specifically call attention to the presence and proximity of Mark as a circumstance demanding greater than usual care. His presence was of course a part of the situation confronting Lauritzen. The Court, in pointing out Lauritzen's duties, explained that the degree of care depended upon the existing circumstances, the likelihood of injury to others, and the actual and potential hazards then existing. We think that the failure to refer specifically to Mark's presence does not constitute reversible error.

6. The Court began its discussion of possible contributory negligence with these words:

"All persons using streets or roads such as Edgewood Road in Alapocas have the right to assume and have the right to act on the assumption that all other persons using such streets and roads will exercise care and caution under the then existing circumstances, the care of each being in proportion to the danger then existing".

Appellants contend that this language was error in that it places a greater burden upon an infant than the law actually imposes. If the sentence had stood alone without qualifications, we would agree with this contention. However, it was immediately followed by four sentences which specifically explained the care expected of a child and the standard for judging his conduct. When read as a whole, this part of the charge leaves no incorrect impression of the law on this subject.

■ 7. Directly after the sentence quoted above, the Court said that the care required of an infant is that which children of the same age would be expected to exercise in similar circumstances. Appellants contend that error was committed by limiting the yardstick to age alone. But the succeeding sentences amplify and explain this statement. They direct the jury, in judging Mark's conduct, to consider not only his age but also his mentality, his physical condition and his knowledge of the general conditions that existed along this street. In our opinion, this section as a whole gave the jury an adequate explanation of the standard for measuring his conduct. Pokoyski v. McDermott, supra.

■ 8. Appellants contend that the Court used language which would lead the jury to believe that the burden was upon the plaintiffs to show Mark's freedom from contributory negligence. The language referred to is a statement that, in order for plaintiffs to recover, it must appear that Lauritzen's negligence was the proximate cause of the accident and that Mark was free from negligence which contributed to it. The sentence contains no mention of the burden of proof, and we are not convinced that the jury was misled in this respect.

■ 9. Appellants point out that, in certain paragraphs dealing with contributory negligence, the Court did not repeat its instruction that the jury should take into consideration Mark's age, mentality and the like. As we have said, earlier in the charge the Court did explain the standard by which his conduct was to be judged in words which included the elements here mentioned. There was no need for the Court to repeat those elements because the charge made it clear that the yardstick was to be applied to all the items of negligence charged against him.

■ 10. Finally, appellants object to a statement in the charge to the effect that, under T. 21 Del.C. § 4144(a), the sounding of a horn is not mandatory. That section, inter alia, provides that a driver "shall give warning by sounding the horn when necessary * * *.". The Court read the statute to the jury and pointed out the requirement quoted, and left to the jury the determination of whether the circumstances were such as to require the warning. We find no reversible error in this regard.

The judgment below will be affirmed.