**Devin A. HUDSON, Plaintiff Below, Appellant,**

v.

**OLD GUARD INSURANCE COMPANY, a foreign corporation, Defendants Below, Appellee.**

No. 560, 2009.

Supreme Court of Delaware.

Submitted: July 21, 2010.
Decided: Aug. 12, 2010.
Reargument Denied Sept. 1, 2010.

I. Barry Guerke (argued) of Parkowski, Guerke & Swayze, P.A., Dover, Delaware for appellant.

Michael I. Silverman (argued) and D. Miika Roggio of Silverman McDonald &

Friedman, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices constituting the Court en banc.

STEELE, Chief Justice:

Underinsured motorist Betty Jean Dennis struck Devin Hudson with her car, when Hudson suddenly rode his bicycle into the road. Hudson asserts that the trial judge erroneously (1) granted his insurer, Old Guard, summary judgment on his allegations that Dennis was negligent *per se*, (2) directed a verdict on the basis that Hudson had acted more negligently than Dennis, and (3) excluded Hudson's expert witness' proffered opinion testimony. Because Dennis had no duty to anticipate Hudson's darting into the road and did not otherwise act negligently, we **AFFIRM.**

## FACTUAL AND PROCEDURAL BACKGROUND

### Hudson darts in front of Dennis's car

On a clear morning, July 12, 2000, 12–year–old Hudson, rode his bicycle around his parents' driveway onto Murray Road, a narrow tree-lined road with grass shoulders. Hudson's parents planned to drive to the end of the driveway, and then follow behind him in the van as he rode to his grandfather's house about a mile away. Hudson planned to cross the street and wait for his parents on the opposite side of the country road. Meanwhile, Hudson's fourteen year-old brother, Michael, was driving a riding lawn mower around the yard with his two year-old brother, Skyler, on his lap.

At this time, Dennis drove eastbound on Murray Road in a 1987 Chrysler station wagon owned by Millsboro Auto Mart, Inc.

Eastbound traffic was light and there was no westbound traffic in this 45 mile-per-hour speed zone. Approximately one half mile from Hudson's driveway, Dennis passed a visible "Children Playing" sign. Dennis testified that as she rounded the bend, approximately 450–600 feet from Hudson's driveway, she noticed children at the end of the Hudson's driveway. Dennis proceeded down the straight stretch of road towards the Hudsons' driveway, traveling between 35–40 miles per hour.

As Dennis approached the end of the driveway, Hudson suddenly entered the road in front of Dennis's car. Dennis swerved to the left, but her front right bumper struck his bicycle. Hudson somersaulted over the handlebars, fell onto the ground, and suffered closed head injuries, cognitive deficits, and neuropsychological damage.[1]

**Hudson pursues insurance through arbitration and litigation**

Through his next friend, Hudson filed suit against Dennis and Millsboro Auto Mart. The parties resolved that dispute through a binding arbitration that awarded the insurance policy limits of $15,000 for each of the two defendants' auto insurance policies.

At the time of the accident, Old Guard provided Hudson's parents auto insurance coverage. Hudson's parents claimed underinsured motorist benefits, but Old Guard denied their claim. Upon reaching the age of majority, Hudson filed suit against Old Guard for recovery of UIM benefits based on third-party negligence.

In October 2008, Old Guard moved for summary judgment, contending that no facts of record exist that could support any third-party liability. Hudson responded that he had a defensive driving expert who would testify that Dennis could have taken preventative actions when approaching the end of the driveway. The trial judge partially granted Old Guard's motion for summary judgment, ruling that Dennis had not acted negligently *per se* by violating rules of the road codified in 21 *Del. C.* §§ 4144 and 4168. The trial judge held that neither § 4144 nor § 4168 imposed any *per se* duty upon her to sound her horn or to drive any slower than she actually did. The trial judge, however, denied summary judgment with regard to common law negligence.

Before trial, each side filed various motions *in limine*. The trial judge granted Old Guard's motion *in limine* to exclude Hudson's liability expert's opinion testimony, stating that a fact-finder would not need a defensive driving expert, and that the expert based his professional opinion on an unreliable methodology. The trial judge held, however, that Hudson's expert could testify if Old Guard sought to introduce evidence that Dennis did all she could to avoid the accident.

After Hudson presented his theory of liability to the jury, Old Guard moved for judgment as a matter of law, pursuant to Superior Court Civil Rule 50. The trial judge granted Old Guard's motion, holding that, as a matter of law, Dennis had not acted negligently, and that, even if she had, Hudson had acted more negligently than had Dennis. The trial judge ruled as a matter of law that Hudson was more than 51 percent negligent, having violated 21 *Del. C.* § 4133 by failing to yield the right of way to approaching vehicles as he entered the roadway.

This appeal followed.

## STANDARD OF REVIEW

 We review a trial judge's grant of summary judgment *de novo* to deter-

---

1. Old Guard disputes the nature and extent of Hudson's injuries.

mine whether, considering the facts and inferences in the light most favorable to Hudson, any genuine issue of material fact existed for the jury to resolve.[2] We review a judge's decision to exclude expert testimony for abuse of discretion.[3]

## ANALYSIS

◼ Hudson must prove, by a preponderance of the evidence, the elements of negligence: duty, breach, causation, and harm.[4] Negligence *per se* requires the defendant to have committed an unexcused violation of a statute or regulation that the trial judge adopts as the standard of care.[5] The General Assembly requires motorists to drive at a reasonable speed,[6] sound the horn, and avoid colliding with pedestrians on the roadway.[7] In 'dart out' cases, however, Delaware applies the common law rule that no one has a duty to anticipate another's negligence. Rather, we hold individuals responsible for reasonably foreseeable events,[8] and we hold minors to the standard of conduct expected of a reasonable child of similar age and situation.[9] Delaware applies the traditional "but for" definition of proximate cause.[10]

### 1. Dennis did not act negligently per se by failing to sound the horn.

◼ In earlier 'dart out' cases, we have held that a motorist had no duty to anticipate a minor's sudden move onto the road from the sidewalk.[11] In *Dietz v. Mead,* the Court held that the defendant "was not bound to anticipate that the minor plaintiff would suddenly dart from a place of safety out into the street, directly in the path of defendant's automobile, unless the circumstances were such as to give ... warning that the minor plaintiff was likely to do so."[12] In *Pokoyski v. McDermott,* we held that similar "circumstances called for an immediate stop of the defendant's car, or a turn of the steering wheel to direct the car away from its path, or both, but not for a signal with the horn."[13]

Considering, as we must, the facts in the light most favorable to the nonmoving party, until he darted out in front of Dennis's car, Hudson was not on the road. Rather, Hudson rode his bicycle on the driveway, and had no shoulder to cross before entering the road. He looked both ways before entering the road, but stated in his deposition that he did not see the oncoming car.

**2.** *Jones v. Crawford,* 1 A.3d 299, 302 (Del. 2010) (citing *Williams v. Geier,* 671 A.2d 1368, 1375 (Del.1996)).

**3.** *M.G. Bancorp. v. Le Beau,* 737 A.2d 513, 522 (Del.1999).

**4.** *Jones,* 1 A.3d at 302 (citing *Lenkewicz v. Wilmington City Ry. Co.,* 74 A. 11, 12–13 (Del.Super.1908); *Sims v. Stanley,* 2008 WL 853538, at *2 (Del. Apr. 1, 2008)).

**5.** Restatement (Second) of Torts § 288B.

**6.** 21 *Del. C.* § 4168.

**7.** 21 *Del. C.* § 4144.

**8.** *Sirmans v. Penn,* 588 A.2d 1103, 1107 (Del. 1991).

**9.** *Moffitt v. Carroll,* 640 A.2d 169, 173 (Del. 1994) (quoting *Pokoyski v. McDermott,* 167 A.2d 742 (Del.1961)) ("The maturity and capacity of the child, [his] ability to understand and appreciate the danger, [his] familiarity with the surroundings, together with the circumstances under which the accident occurred, must all be taken into consideration in determining whether or not [he] was guilty of contributory negligence.").

**10.** *Jones,* 1 A.3d at 302 (citing *Wilmington Country Club v. Cowee,* 747 A.2d 1087, 1097 (Del.2000)).

**11.** *Dietz v. Mead,* 160 A.2d 372 (Del.1960); *Pokoyski,* 167 A.2d 742.

**12.** *Dietz,* 160 A.2d at 373.

**13.** *Pokoyski,* 167 A.2d at 746.

A reasonable driver would have no reason to expect that a reasonable twelve-year-old would enter the roadway after seeing him look in the direction of the oncoming car, and indeed might expect that the reasonable twelve-year-old would *not* enter the road after taking that precaution.

Hudson asserts that our holding in *House v. Lauritzen* requires the trial judge to allow the jury to determine whether Dennis should have sounded her horn.[14] *House* does not control these facts, because in *House* the seven-year-old rode his bicycle *on the road* for an extended period of time before striking defendant's car. That case did not involve a darter, but rather a roadway cyclist that the jury could have determined that the motorist had previously seen *on the road*. Dennis had no statutory duty to sound the horn because she had no reason to believe Hudson would suddenly enter the roadway directly before her. We agree with the trial judge's ruling that she could not, therefore, have acted negligently *per se* by failing to sound her horn.

### 2. Hudson acted equally or more negligently than Dennis.

 Section 4168 requires motorists to account for potentially hazardous vehicles or conveyances "on or entering the highway." Delaware tort law has long imposed a duty on motorists to use reasonable care, drive at a reasonable rate of speed under the circumstances, and slow or stop to avoid imminent danger, regardless of the posted speed limit.[15] Motorists, however, need not slow down in anticipation of danger that has not yet become apparent.[16] Although we require motorists to take greater care to protect minor pedestrians,[17] the minor still has a duty to act as a reasonable child of similar age and situation.[18]

 When the trier of fact must compare a child's negligence to that of an adult, Delaware courts employ a two-step analysis. First, the trier of fact determines whether the child violated a standard based on the child's age, experience, and situation at the time of the accident, and whether the adult violated a reasonable person standard of care. Second, the trier of fact apportions the negligence, but without considering the age and experience of the child.[19] We have held that the trier of fact apportions negligence only after determining duty, breach, and proximate causation.[20]

 The trial judge granted Old Guard's motion for summary judgment, because he found that Hudson had acted equally—if not more—negligently than Dennis. Hudson rode his bicycle at home, where he had great familiarity with his parents' driveway, the surrounding road, and mid-day traffic. That Hudson looked both ways before riding onto the road indicates that he appreciated the risks of crossing the road, and that he could have seen Dennis's car driving straight down the road on a clear day. Hudson, therefore, had the ability to appreciate his surroundings and the dangers that the situa-

---

14. 237 A.2d 134, 136 (Del.1967).

15. *Simeone v. Lindsay,* 65 A. 778 (Del.Super.1907); *Lockerman v. Hurlock,* 125 A. 482 (Del.Super.1924); *Carnes v. Winslow,* 182 A.2d 19 (Del.1962).

16. *Williams v. Chittick,* 139 A.2d 375 (Del.1958).

17. *Brown v. Wilmington,* 27 Del. 492, 497, 90 A. 44 (1914).

18. *Moffitt,* 640 A.2d 169.

19. *Id.* at 174.

20. *Id.* at 175.

tion presented. By darting onto a road with no shoulder, just moments before a car drove along a straight and familiar section of that road, Hudson failed to act as a reasonable twelve-year-old would have acted in the same circumstances.

Dennis, as we have discussed, had no duty to sound her horn or anticipate Hudson's darting onto the road. She drove between five and ten miles per hour below the posted speed limit, which provided appropriate velocity guidance on a clear day. We cannot say that Dennis acted negligently under these circumstances.

As she proceeded 450–600 feet, along the straightaway towards the Hudsons' house, she and Hudson had equal opportunity to see one another. Hudson controlled his decision to dart onto the road, and Dennis had already slowed her car well below a reasonable speed for a 45–mile–per–hour speed zone on a clear day.[21] Michael Hudson's presence on a lawn mower may have compromised Devin's ability to hear Dennis's car, but Devin still had ample opportunity to see her. If Hudson did stop to look both ways for oncoming traffic and Dennis saw Hudson—as each testified that they did—then Dennis might have reasonably expected him to have seen her and to continue waiting on the driveway. No reasonable juror, however, could have concluded that Dennis had a duty to do more than she did do to avoid hitting Hudson—much less that Dennis had acted more negligently than Hudson. Therefore, we agree that the trial judge properly entered judgment for Old Guard.

### 3. Hudson's purported expert sought to testify about common knowledge.

 Finally, the trial judge did not abuse his discretion by excluding purported expert testimony about the actions a reasonably prudent defensive driver would take upon seeing a child on a bicycle near the roadway. In determining the admissibility of expert testimony, the trial judge must weigh the following five factors: (1) whether the witness is qualified based on knowledge, skill, experience, training, or education; (2) whether the evidence is relevant and reliable; (3) whether the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (4) whether the expert testimony will assist the trier of fact to understand the evidence or determine a fact in issue; and (5) whether the expert testimony will create unfair prejudice or confuse or mislead the jury.[22] We have held that some evidence may be "commonly understood" and that putting an "expert label or veneer" on that evidence could prejudice the jury.[23]

Hudson's expert sought to testify about a subject that falls within the purview of a layperson's knowledge. He claims expert status, based on a four-hour course that certified him as a defensive driving instructor, and knowledge that every licensed driver is charged with possessing. He has never visited the scene of the accident, possessed no specialized knowledge about the relevant events, and admittedly did not know how close to the road the Hudson brothers were driving their bicycle and lawnmower.

---

**21.** If a motorist cannot reasonably drive five to ten miles per hour below the posted speed limit, along a straight section of the road on a clear day, the posted speed limits would offer no guidance under any circumstances.

**22.** *Eskin v. Carden,* 842 A.2d 1222, 1227 (Del. 2004).

**23.** *Anker v. State,* 913 A.2d 569 (Del.2006) (disallowing an expert on interpersonal relationships).

We, therefore, find that: (1) the purported expert's qualifications were suspect; (2) it is unclear whether he could present relevant evidence, given his lack of specialized knowledge of Hudson as he entered the road; (3) his methodology was unclear; (4) his opinion evidence would not have assisted the trier of fact because laypeople are equally capable of drawing reasonable inferences from the relevant facts; and (5) putting an "expert veneer" on this testimony could have an unfairly prejudicial effect on the jury. We agree that the trial judge properly excluded Hudson's purported expert testimony.

■ Trial judges should grant judgment to moving parties when the parties' contentions are not premised on genuine issues arising from disputed material facts. This reflects efficient use of judicial resources, prompt resolution of litigation, and proper application of the law. Unlike our recent decision in *Jones v. Crawford,* which involved material factual disputes and potential supervening causation, this appeal involves a well-settled factual record and straightforward legal questions that the trial judge decided correctly.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the trial judge's grant of summary judgment, directed verdict, and exclusion of expert testimony.