# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PATRICIA A. GLASS-HILL, )
)
        Plaintiff, )
)
        v. )
) C.A. No. N21C-11-204 SPL
DONALD L. GORDON and )
STATE FARM MUTUAL )
AUTOMOBILE INSURANCE )
COMPANY, a foreign corporation, )
)
        Defendants. )
)
)

Submitted: June 20, 2023
Decided: August 14, 2023

*Upon Defendant Donald L. Gordon's*
*Motion for Summary Judgment,* **GRANTED.**

*Upon Defendant State Farm Mutual Automobile Insurance Company's*
*Motion for Summary Judgment,* **DENIED.**

## ORDER

This 14th day of August, 2023, upon consideration of Defendant State Farm

Mutual Automobile Insurance Company's ("State Farm") Motion for Summary

Judgment,[1] Defendant Donald L. Gordon's ("Gordon") Motion for Summary

---

[1] D.I. 22.

Judgment,[2] Patricia Glass-Hill's ("Glass-Hill") responses,[3] and oral argument,[4] it appears to the Court that:

## BACKGROUND

1.      On the evening of October 21, 2020, Glass-Hill drove northbound on Philadelphia Pike, passed through the intersection with Darley Road, then slowed to a stop and signaled her intent to turn left into the Church of the Ascension parking lot.[5]  While Glass-Hill stopped to "wait for clear traffic," a truck stopped opposite her in the left lane of southbound Philadelphia Pike, and its driver "waved her on."[6] Meanwhile, Gordon, returning home from work in New Jersey, exited Interstate 495 southbound onto southbound Philadelphia Pike.[7]  After turning onto Philadelphia Pike, Gordon positioned his vehicle in the right lane because "there was a truck in the left hand lane impeding traffic."[8]  Glass-Hill explained that she "made the left turn . . . because the gentleman in the white truck told [her] to go ahead."[9]  As Gordon passed the stopped truck, "it was almost as if the person whomever was in the green

---

[2] D.I. 23.

[3] D.I. 25, 26.

[4] D.I. 30.

[5] Gordon Mot. Summ. J., (D.I. 23), Ex. A at 13, 96.

[6] *Id.* at 13.

[7] Gordon Mot. Summ. J., Ex. B at 12-15.

[8] *Id.* at 16.

[9] Gordon Mot. Summ. J., Ex. A at 16.

pickup was sending somebody across in an immediate danger zone."[10] Gordon struck Glass-Hill as she turned left in front of his vehicle.[11] The "waving driver" of the pickup truck, identified only as a white male,[12] did not remain at the collision scene.[13]

2. A Delaware State Police officer responded to the collision scene and, following his investigation, concluded that Glass-Hill failed to yield the right of way to Gordon.[14] The officer issued Glass-Hill a citation for failing to yield the right of way, and she subsequently admitted guilt to the charge by submitting payment to the Voluntary Assessment Center.[15]

3. On November 24, 2021, Glass-Hill filed a complaint alleging negligence on the part of Gordon and the unidentified motorist who waved her to proceed.[16] At the time of the accident, Glass-Hill maintained uninsured motorist coverage through State Farm; thus, State Farm sits in the position of the unidentified

---

[10] Gordon. Mot. Summ. J. Ex. B at 20.

[11] *Id.* at 21-22; Gordon Mot. Summ. J. Ex. A at 20.

[12] *Id.* at 104.

[13] *Id.* at 33.

[14] Gordon Mot. Summ. J., Ex. C at 14 - 15.

[15] Gordon Mot. Summ. J., Ex. D.

[16] D.I. 1.

driver of the truck. On February 10, 2023, Gordon and State Farm filed motions for summary judgment.

## STANDARD OF REVIEW

4.       Under Superior Court Civil Rule 56, summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[17] On a motion for summary judgment, this Court "(i) construes the record in the light most favorable to the non-moving party; (ii) detects, but does not decide, genuine issues of material fact; and (iii) denies the motion if a material fact is in dispute."[18] The moving party bears the initial burden of demonstrating that the undisputed facts support claims or defenses.[19]  If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[20]

---

[17] Super. Ct. Civ. R. 56(c).

[18] *US Dominion, Inc. v. Fox News Network, LLC,* 2023 WL 2730567, at *17 (Del. Super. Ct. Mar. 31, 2023) (quoting *CVR Refin., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *8 (Del. Super. Ct. Nov. 23, 2021) (cleaned up)).

[19] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole v. Lowengrub*, 180 A.2d 467 (Del. Super. Ct. 1962)).

[20] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

## ANALYSIS

### A. *Gordon's Motion for Summary Judgment*

5.     Gordon argues that "there are no facts which demonstrate that [he] was the proximate cause of the motor vehicle accident or was negligent in any way thereby causing [Glass-Hill's] injuries."[21]  Further, Gordon asserts that Glass-Hill "understood she had to yield the right of way to oncoming traffic[,] . . . [and] [h]er failure to observe [Gordon] [did] not negate her duty to yield to his right of way."[22]  Finally, Gordon contends that Glass-Hill's "guilty plea of the citation is an admission that she failed to yield the right of way thereby causing this motor vehicle accident."[23]

6.     Glass-Hill responds that "Gordon was negligent by failing to maintain a proper lookout, operating his vehicle in a careless manner, failure [sic] to control the speed of his vehicle, and failing to operate his vehicle with due regard for road and traffic conditions then existing."[24]  She posits that Gordon took no "precautions due to the stopped vehicle in the left turn lane of southbound Philadelphia Pike."[25]  And, Glass-Hill argues that her "payment of the voluntary assessment . . . does not

---

[21] Gordon Mot. Summ. J. at ¶ 7.

[22] *Id.* at ¶ 8.

[23] *Id.* at ¶ 9.

[24] Glass-Hill Resp. Gordon Mot. Summ. J., (D.I. 26), at 2, ¶ 2 (citing Compl. at ¶ 6).

[25] *Id.* at 3-4, ¶ 6

conclusively establish her negligence as the sole proximate cause of the accident."[26] Rather, she posits that "whether [her] payment of a voluntary assessment constitutes an admission of guilt is an issue of fact for the trial."[27]

7. "In order to prevail in a negligence action, a plaintiff must show by a preponderance of the evidence, that a defendant's negligent act or omission breached a duty of care owed to plaintiff in a way that proximately caused the plaintiff injury."[28] "If the defendant establishes that [he] owed no duty to the plaintiff, [he] is entitled to summary judgment as a matter of law."[29] "Delaware tort law has long imposed a duty on motorists to use reasonable care, drive at a reasonable rate of speed under the circumstances, and slow or stop to avoid imminent danger, regardless of the posted speed limit. Motorists, however, need not slow down in anticipation of danger that has not yet become apparent."[30] While issues of negligence are generally not decided in summary judgment, "this does not mean that

---

[26] *Id.*at 4, ¶ 7.

[27] *Id.*

[28] *Duphily v. Delaware Elec. Co-op., Inc.,* 662 A.2d 821, 828 (Del. 1995) (citing *Culver v. Bennett*, 588 A.2d 1094, 1096-97 (Del. 1991)).

[29] *Helm v. 206 Massachusetts Avenue, LLC,* 107 A.3d 1074, 1078 (Del. 2014).

[30] *Hudson v. Old Guard Ins. Co.,* 3 A.3d 246, 251 (Del. 2010) (cleaned up).

summary judgment is never appropriate in negligence actions."[31]  Such is the case here.

8.      Glass-Hill asserts that, despite Gordon's awareness of a vehicle stopped ahead of him, he "continued to travel at 30 to 35 mph and did not take any further precautions to determine if it was safe to proceed past the vehicle stopped in the left-hand southbound lane."[32]  She contends that "[t]here are questions of fact as to whether Gordon's failure to take any precautions as he approached the stopped traffic in the left-hand southbound lane of Philadelphia Pike was negligent and whether this negligence was a proximate cause motor vehicle accident."[33]  Viewing the evidence in the light most favorable to Glass-Hill, the Court concludes that there is no genuine issue as to any material fact.

9.      Individuals, such as Gordon, are responsible for "reasonably foreseeable events," and, in cases where an unforeseeable event occurs, such as where a child darts into traffic, "Delaware applies the common law rule that no one has a duty to anticipate another's negligence."[34]  There is no reason to deviate from this rule here.  Gordon traveled within his lane and within the speed limit, and Glass-

---

[31] *Gibson v. Metropolitan Group Property and Casualty Insurance Co.,* 2017 WL 5606714, at *2 (cleaned up).

[32] Glass-Hill Resp. Gordon Mot. Summ. J. at 5, ¶ 8.

[33] *Id.* at 6, ¶12.

[34] *Hudson,* 3 A.3d at 250.

Hill unexpectedly turned into his path of travel. "Motorists . . . need not slow down in anticipation of danger that has not yet become apparent."[35] The Court declines to accept Glass-Hill's invitation to impose an enhanced duty upon drivers to reduce speed and take "further precautions" when passing a stopped vehicle on a multi-lane roadway under the circumstances described here.

10.   Duty is measured in terms of reasonableness and is equated to the conduct of a reasonably prudent person under the circumstances.[36] Whether a defendant is "under a legal obligation - a duty - to protect the plaintiff from the risk of harm which caused [her] injuries … is entirely a question of law" for the court to determine.[37] Here, Gordon's conduct was that of a reasonably prudent person under the circumstances, and he had no reason to expect Glass-Hill, or any other motorist, would cross his lane of travel. There is no evidence that Gordon failed to exercise due care or drove at an unreasonable speed. Accordingly, Gordon's Motion for Summary Judgment is granted.[38]

---

[35] *Id.* at 251.

[36] *McLaughlin v. Dover Downs, Inc.*, 2008 WL 2943392, at *12 (Del. Super. Ct. July 17, 2008).

[37] *Fritz v. Yeager*, 790 A.2d 469, 471 (Del. 2002) (citing *Bryant v. Delmarva Power & Light Co.*, 1995 WL 653987, at *2 (Del. Super. Ct. Oct. 2, 1995)).

[38] The Court reaches this conclusion without considering Glass-Hill's payment of the citation issued to her after the crash. "[P]ayment of the voluntary assessment does not conclusively establish negligence." *Torres v. Bishop*, 2021 WL 6053870,

### *State Farm's Motion for Summary Judgment*

11.    State Farm contends that "summary judgment is appropriate because the undisputed facts demonstrate that the unidentified driver's alleged wave was not a proximate cause of the motor vehicle accident."[39]  And, State Farm argues, because Glass-Hill's "decision to continue across the right-hand lane of southbound Philadelphia Pike in front of Gordon was based upon her own independent judgment of the traffic conditions[,] . . . the actions of the unidentified pick-up driver cannot be a proximate cause of the accident between [Glass Hill] and Gordon."[40]

12.    Glass-Hill responds that it is typically for a jury to "determine whether a reasonable person would have interpreted the wave as an indication that it was safe to cross and whether a duty should be imposed."[41]  She contends that she relied upon both her independent assessment of the conditions and the opposing driver's wave to initiate her left turn across oncoming traffic.[42]

13.    Under Delaware law, when a driver relies on an unidentified driver's wave as an indication to cross all lanes of traffic, the unidentified driver may be a

---

at *6 (Del. Super. Ct. Dec. 21, 2021) (cleaned up).  Rather, "the finder of fact [may] consider payment of a voluntary assessment as evidence of negligence." *Id.*

[39] State Farm Mot. Summ. J. (D.I. 22) at 3, ¶ 4.

[40] *Id.* at 6, ¶ 12.

[41] Glass-Hill Resp. State Farm Mot. Summ. J., (D.I. 25), at 5, ¶ 9 (citing *Evans v. Lattomus*, 2011 WL 664046, at *1 (Del. Super. Ct. Feb. 8, 2011)).

[42] Glass-Hill Resp. State Farm Mot. Summ. J. at 4, ¶ 5.

9

proximate cause of the accident. "[I]t is normally a question of fact as to whether or not the waving driver was negligent. The jury determines whether a reasonable person would have interpreted the wave 'as an indication that it was safe to cross' and whether a duty should be imposed."[43]

14. During her deposition, Glass-Hill was asked several questions about the unidentified pickup truck driver's wave:

Q: Can you describe for me how this accident occurred?

A: Yes, ma'am. . . . I stopped waiting for clear traffic. When the white truck came up, he stopped and he waved me on. I proceeded to go slowly. And as I proceeded to go slowly, I looked to my right, didn't see nothing and went on. And that's when the guy just slammed me.[44]

*****

A: I made the left turn, ma'am because the gentlemen in the white truck told me to go ahead.[45]

*****

A: I made the left turn because I was advised to do so and I saw no oncoming traffic.[46]

*****

---

[43] *Evans*, 2011 WL 664046, at *1 (citing *Singleterry v. H.H. Moore, Jr. Trucking Co., Inc.*, 1996 WL 527313, at *2 (Del. Super. Ct. June 20, 1996)).

[44] Gordon Mot. Summ. J., Ex. A at 13.

[45] *Id.* at 16.

[46] *Id.* at 20.

Q: And because you could not see you still had that duty [to ensure that the roadway is clear before entering the oncoming lane] even if you could not see you still had that duty, correct?

A: Yes, ma'am. But I assumed that the driver knew what he was saying when he told me to go ahead.

Q: Okay. And did he say something or did he wave at you?

A: He waved.

Q: So he didn't actually speak to you?

A: No, ma'am.

Q: And when he waved was it your understanding that he was waving you across the entire intersection or just in front of him?

A: For me to go ahead in front of him and, you know, to proceed.[47]

***** 

A: I understood his wave to tell me to go ahead, I was clear.

Q: To go across the entire intersection or just in front of the white truck?

A: To go across the entire street. It was not an intersection.[48]

***** 

Q: Do you agree that you failed to yield the right of way to oncoming traffic?

A: I can only say what I said before, ma'am, is that I assumed the driver of the white truck, you know, knew that it was safe for me to go ahead and that's all that --[49]

***** 

_____

[47] *Id.* at 23-24.

[48] *Id.* at 24-25.

[49] *Id.* at 28-29.

A: Again, as I stated before, I was given the right of what by the driver in the white truck.[50]

*****

Q: All right. At that point in time had you already started to cross that median area or not?

A: When he gave me the wave?

Q: Correct.

A: When he gave me the wave, yes, I started to go across.

Q: All right. So you first crossed across the median area?

A: Yes sir.

Q: All right. When you got to the end of the median area, did you keep proceeding or did you pause?

A: I slowly went in front of the truck and then I slowly as I came out into the right-hand lane looked to my right and proceeded on.[51]

*****

Q: But my question is. Were you able to take a look down the pike? Did you have a view of what was coming down?

A: Yes, for a split second. When I looked, I saw nothing, sir.[52]

15.    Glass-Hill relied upon the unidentified truck driver's wave and, to the best of her ability under the circumstances, assessed roadway conditions before crossing into Gordon's path. But, it is clear that the truck driver's wave factored

---

[50] *Id.* at 30.

[51] *Id.* at 106-7.

[52] *Id.* at 109.

into her decision.  In short, while not exclusively, she relied upon the wave in making her decision to cross the southbound lanes of Philadelphia Pike.

16.     This Court may grant summary judgment where a driver's wave had no influence on the actions of another.  In *Stansbury v. Goodwin,* the driver of a truck signaled for Goodwin to enter the roadway.[53]  Goodwin testified that he "did not rely on the truck driver in any way" and confirmed that his decision to pull out of the parking lot was "100%" based on his own judgment.[54]  This Court granted summary judgment because the truck driver was not a proximate cause of the accident.[55]  In *Evans v. Lattomus*, the unidentified driver of an SUV waved Lattomus into an intersection.[56]  This Court granted summary judgment because "[t]he undisputed facts indicate that Lattomus did not rely on the unidentified driver's motion into the intersection."[57]  And, in *Johnson v. Magee*, an unidentified bus driver waved to Magee;[58] Magee understood the bus driver's wave to express her need to "clear the intersection so she could make the turn."[59]  This Court granted summary judgment

---

[53] 2016 WL 3619920, at *1.

[54] *Id.*

[55] *Id.* at *3.

[56] 2011 WL 664046, at *2.

[57] 2011 WL 664046, at *2.

[58] *Johnson v. Magee*, 2007 WL 4248523, at *2 (Del. Super. Ct. Nov. 30, 2007).

[59] *Id.*

13

because "[t]he evidence clearly establishe[d] the bus driver did not wave Magee to come into the intersection[, and] [t]here was no confusion on Magee's part as to the meaning of the wave."[60]

17.    But where a driver's wave influences the actions of another, summary judgment is not appropriate.  In *Hearn v. Garver,*[61] this Court denied summary judgment where an unidentified bus driver waved Garver to proceed through the intersection.[62]  Garver then inched forward to check for oncoming traffic, at which time she collided with Hearn's vehicle.[63]  Garver believed the bus driver's wave signaled that it was "okay" to proceed as she could not see beyond the bus.[64]  Further, Garver looked around the bus as she began her turn to make sure there was no more oncoming traffic.[65]  The court held:

> Whether or not Garver relied on the unidentified bus driver's wave as an indication that she could complete her turn is material to whether Geico, as the uninsured motorist provider, faces liability.  Therefore, insofar as Geico disputes that Garver fully relied on the wave, despite her sworn testimony to the contrary, there exists a genuine issue of material fact precluding summary judgment.[66]

---

[60] *Id.* at *3.

[61] *Hearn v. Garver*, 2013 WL 6039980, at *1 (Del. Super. Nov. 7, 2013).

[62] *Id.*

[63] *Id.*

[64] *Id.* at *2.

[65] *Id.*

[66] *Id.* (internal citations omitted).

18.     So, too, here.  After seeing the pickup truck driver's wave, Glass-Hill checked for oncoming traffic as she entered the right-hand lane but could not see down the length of the truck.[67]  Her decision to make the left hand turn across southbound lanes of Philadelphia Pike was influenced by the wave and her independent judgment.  The Court finds that where, as here, a driver is influenced by a wave yet exercises a degree of independent judgement, it is for the factfinder to assess the negligence of the waving driver.  As such, there exists a genuine issue of material fact precluding summary judgment.

## CONCLUSION

19.     Gordon's Motion for Summary Judgment is **GRANTED**.  State Farm's Motion for Summary Judgment is **DENIED**.

IT IS SO ORDERED.

_____
Sean P. Lugg, Judge

---

[67] Glass-Hill Resp. to State Farm Mot. Summ. J., Ex. A at 117.

15