**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| AARON ROGERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No.: N24C-04-058 SSA |
| | ) | |
| DELAWARE SURGICAL | ) | |
| GROUP, P.A., and | ) | |
| JOSEPHY BELGRADE, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: August 1, 2025
Decided: August 29, 2025

## MEMORANDUM OPINION

Defendants filed a Motion for Summary Judgment pursuant to Superior Court Civil Rule 56. The Court heard oral argument on August 1. For the reasons that follow, the Court Grants the Motion for Summary Judgment as to Count One, Breach of Contract; the Motion for Summary Judgment is Denied as to Counts Two and Three, claiming Negligence and Negligent Infliction of Emotional Distress.

### *Factual Background*

Plaintiff sought treatment at Defendants' office for surgical repair of an inguinal hernia. During his surgery consultation, Plaintiff advised Dr. Belgrade he had limited insurance, and so he needed clarity on the cost of his surgical procedure. That said, Plaintiff acknowledged he had no contract with Defendants regarding the

payment of any bills for the facility or for anesthesia.[1] Both parties agree Plaintiff spoke with Danielle Carey (hereinafter "Ms. Carey), who worked at Delaware Surgical Group, after his surgical consult with Dr. Belgrade.[2] Ms. Carey provided a Current Procedural Terminology (hereinafter "CPT") Code, at the direction of Dr. Belgrade.[3] Indeed, Ms. Carey stated that she frequently gives out CPT Codes to patients.[4] Ms. Carey testified she has a spreadsheet, which she created, populated with CPT Codes.[5] There is a CPT Code reference book, but Ms. Carey did not consult the book on this occasion, instead she referenced her spreadsheet.[6]

Ms. Carey reviewed the treatment note created by Dr. Belgrade for Plaintiff. The deposition transcript reveals the treatment note references "open hernia repair, adult hernia, adult inguinal hernia."[7] Ms. Carey advised this note was a template.[8] Despite the reference on the note for open repair, Plaintiff underwent robotic inguinal hernia repair.[9] According to Ms. Carey, the treatment note would always say open repair, regardless of whether it was robotic or not. [10]

---

[1] Plaintiff's Dep. at p. 12.
[2] Plaintiff's Dep. At p. 13, Ms. Carey Dep. at p. 13-14.
[3] Ms. Carey Dep. at p. 14.
[4] *Id*. at p. 43.
[5] *Id.* at p. 39-40.
[6] *Id.* at p. 40.
[7] *Id.* at p. 10.
[8] *Id.* at p. 11.
[9] Plaintiff's Dep. at p. 16; Ms. Carey Dep. at p. 11.
[10] Ms. Carey Dep. at p. 12.

Ms. Carey testified she provided the robotic CPT Code to Plaintiff.[11]  In her deposition, Ms. Carey stated she told Plaintiff to reach out to the hospital and thereafter confirm with her whether he wanted the robotic procedure.[12]  She was aware Plaintiff was concerned about out-of-pocket cost.[13]  She recalls a subsequent phone call from Plaintiff, wherein he requested the CPT Code for an open repair.[14]

Ms. Carey provided Plaintiff with a cost related to the surgeon's fee alone.[15] She advised Plaintiff the facility and anesthesia charges are separate costs.  Plaintiff was told he would need to make calls and provide the CPT Code for the procedure to obtain the additional costs.[16]  There was also testimony from Ms. Carey that Dr. Belgrade asked her to see if she could email Plaintiff the costs, but the insurance company would not provide her information in writing.[17]

Plaintiff was deposed.  He recalled his conversation with Ms. Carey:

> I asked her if she could help me figure out what it would cost for my surgery in the event I had no health insurance coverage.  She said to me, there are three bills that you will see, the surgeon's charge, the anesthesia charge, and the facility charge.  She said a CPT code will give you that information…She gave me the number, 49505, that was the only number she gave me.[18]

---

[11] Ms. Carey Dep. at p. 14.
[12] *Id.* at p. 14-16.
[13] *Id.* at p. 15, 30.
[14] *Id.* at p. 16-17.
[15] *Id.* at p. 13-14.
[16] *Id.* at p. 19.
[17] Id. at p. 36.
[18] Plaintiff's Dep. at p. 24.

Plaintiff maintains he was not given a code for a robotic surgery.[19] Plaintiff claims Ms. Carey provided him with a phone number for the facility and anesthesia.[20] Plaintiff testified he called the numbers he was given, with the CPT Code he was given, and received quotes for the cost of the surgery.[21] Plaintiff does not recall having a discussion with the hospital representative about the nature of the surgery itself until after he received a bill.[22] Plaintiff's recollection is that the hospital representative "understood that there was a mistake made, in terms of the code that I was given and the one that was actually used."[23]

Plaintiff further testified he spoke with Kathy Wright, Ms. Carey's supervisor, about the bill.[24] According to Plaintiff, Ms. Wright explained the unexpectedly large bill was because of the incorrect CPT code for the procedure.[25] Defendant has attached a Surgical Services Scheduling Fax Form that references a robotic repair.

Ms. Wright testified that CPT Codes are provided by Delaware Surgical Group to the patient.[26] She further stated that an employee would be subject to discipline for providing incorrect billing information to a patient, including an

---

[19] Plaintiff's Dep. at p. 25.
[20] *Id.* at p. 24.
[21] *Id.* at p. 28-29.
[22] *Id.* at p. 34-35, 37.
[23] *Id.* at p. 54.
[24] *Id.* at p. 56.
[25] *Id.* at p. 57.
[26] Dep. of Ms. Wright at p. 8

incorrect CPT Code.[27] Ms. Wright was asked about a document from Plaintiff's medical record from his initial visit which references an "open hernia repair." She went on to advise that Plaintiff did not have an open repair but instead underwent a robotic hernia repair.[28] Ms. Wright testified "…he had an envelope that was sitting on the ledge. The Code 49505 was written on the back of the envelope. And I asked him where did you get this Code from. And he said the surgery scheduler gave it to him. I told him that Code is for an open inguinal procedure. And you wanted and chose the robotic inguinal procedure which is 49650."[29]

Plaintiff testified that he has not suffered physical injury as a result of this matter.[30] He endured sleepless nights, loss of appetite, and nausea.[31] He has not seen any doctor regarding these issues. His sleepless nights have persisted at irregular intervals, and Plaintiff acknowledged other issues may play into his inability to sleep.[32] Plaintiff attributes his loss of appetite and nausea to this case only.[33]

---

[27] Dep. of Ms. Wright at p. 12-13.
[28] *Id.* at p. 15.
[29] *Id*. at p. 20.
[30] Plaintiff's Dep. at p. 66.
[31] *Id.*
[32] *Id.* at 69.
[33] *Id.* at 70-71.

### *Standard of Review on a Motion to Dismiss*

"A motion for summary judgment will be granted on a claim when the moving party shows 'that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'"[34] The Court will grant summary judgment if the evidence shows no genuine issue of material fact.[35] The Court must view the facts and inferences drawn therefrom in the light most favorable to Plaintiff.[36] It has long been the law in this jurisdiction that if material questions of fact remain or if the Court has insufficient facts for a legal application, the Court should not grant summary judgment.[37] With these principles in mind, the Court reviews the arguments of each side, and the applicable law, before conducting a factual analysis.

### *Breach of Contract*

In response to the Motion for Summary Judgment, Plaintiff alleges the contract in this case was either express or implied in fact. To support this position, Plaintiff cites to this Court's decision in *Lawrence v. Dibiase.*[38] "[T]o prevail on a theory of implied in fact contract, the plaintiff must establish that the parties, through their

---

[34] *GMG Insurance Agency v. Edelstein,* 328 A.3d 302 (Del. 2024).
[35] *De Los Santos v. Allstate Property and Casualty Insurance Company,* 2025 WL 2092402 (Del.) citing Super. Ct. Civ. R. 56(c).
[36] *Id. citing GMG Insurance Agency v. Edelstein,* 328 A.3d. at 309.
[37] *Motorola, Inc. v. Amkor Technology,* 849 A.2d 931, 936 (Del. 2004) *citing Moore v. Sizemore,* 405 A.2d 679, 680 (Del. 1979); *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).
[38] 2001 WL 1456656 (Del. Super.).

actions, 'demonstrated a meeting of the minds on all essential terms of the contract.'"[39]  The case upon which *Dibiase* is based, *Trincia v. Testardi*[40] helpfully explains the distinction between both types of contract:

> An express contract is one where the terms of the agreement are stated in so many words, and an implied contract is where one party receives benefits from another party, under such circumstances, that the law presumes a promise on the part of the party benefited to pay a reasonable price for the same.[41]

Turning to the facts of this case and applying both the summary judgment standard and the legal precepts regarding express and implied in fact contracts, the Court finds there are no genuine issues of material fact.  After a careful review of the deposition testimony of Plaintiff and both representatives of Defendants, the Court finds there was no agreement between Plaintiff and Defendant as to the cost of the surgery beyond Defendants' price.  Plaintiff testified as such at his deposition.[42]  Here, Plaintiff is not disputing the bill he received from Defendants.[43] There was no express contract related to setting the cost of the surgery from the facility or anesthesiologist.

---

[39] *Id.* at *5.
[40] 57 A.2d 638 (Del. Ch. 1948).
[41] *Id.* at 642.
[42] "Question: In your discussions with Dr. Belgrade, he did not make any representations or statements about the costs of what the procedure would be at the hospital or—
Answer: That is correct.  Deposition transcript of Plaintiff, p. 17.
[43] Deposition transcript of Plaintiff, p. 13-14.

There was also no implied contract. The only benefit received for Defendants were payment rendered for the cost of the surgery—which is not a fact in dispute in this case. Defendants did not receive a benefit from the provision of the CPT Code to Plaintiff. The purpose of providing the CPT Code was so that Plaintiff could use that information to ascertain costs from other providers. As such, Summary Judgment is Granted as to Count One.

## *Negligence*

The law requires demonstration of duty, breach, causation and harm to establish negligence.[44] Phrased another way, Plaintiff must establish Defendants owed a duty of care; they breached that duty; an injury; and that the breach itself was a proximate cause of that injury.[45]

"Generally, to determine whether one party owed another a duty of care, we follow the guidance of the Restatement (Second) of Torts."[46] In *Rogers,* the Supreme Court of Delaware further cited to Section 302 of the Restatement, specifically Comment (a), which provides:

> Anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act.

---

[44] *Hudson v. Old Guard Ins. Co.,* 3 A.3d 246 (Del. 2010).
[45] *Campbell v. DiSabatino,* 947 A.2d 1116, 1117 (Del. 2008).
[46] *Rogers v. Christina School Dist.,* 73 A.3d 1 (Del. 2013).

8

Further the Court looks to Section 323 of the Restatement in assessing whether a party assumed a duty of care. That Section states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:
>
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.[47]

Having undertaken a voluntary duty, the party must perform the duty reasonably, considering the dangers at issue.[48] The Court must assess the foreseeability of the danger.[49] Acts are classified as misfeasance, "under the Restatement and other respected sources, because [] affirmative acts created a risk of harm."[50]

The case of *Murphy v. Godwin* requires careful analysis here to determine duty.[51] In *Murphy,* the defendant doctor was alleged to have failed to return paperwork to the insurance company. The failure by the doctor resulted in the Plaintiff becoming uninsured for a period, which resulted in substantial medical bills. The Court squarely framed the question as whether the relationship between doctor and patient "justified the imposition upon the doctor of a duty to act where the patient needs the

---

[47] *Rogers*, 73 A.3d at 9 quoting Restatement (Second) of Torts § 323 (1965).
[48] *Id. citing Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 524 (Del. 1987).
[49] *Id.*
[50] *Ramsey v. Georgia Southern University Advanced Development Center,* 189 A.3d 1255, 1262 (Del. 2018).
[51] 303 A.2d 668 (1973).

9

doctor's help in filling out a short routine form to obtain an insurance contract."[52] "[I]f a doctor-patient relationship is shown to exist, it must have given rise to a duty of reasonable care in the disposition of the form…"[53]

Defendants assert they owed no "duty in regard to the costs associated with the surgical services they provided." In further support, Defendants cite to the record wherein Plaintiff confirmed no statements were made by Defendants related to paying for the costs from the hospital or anesthesiologist. Defendant also argues that Dr. Belgrade individually did not provide a CPT Code.[54]

Plaintiff's argument is one of misfeasance. The Court finds that under the unique facts of this case, a duty exists. Defendants undertook a duty by providing CPT Codes to patients. Indeed, the deposition testimony reveals Defendants would discipline an employee for providing the incorrect code. Defendants were aware that Plaintiff was concerned about the cost of surgery at the time they undertook the provision of the CPT Code. The provision of an incorrect code could foreseeably result in larger than expected medical bills. Despite Defendants' insistence that "the evidence here demonstrates that all information provided to Rogerson was accurate,"

---

[52] *Id.* 674.
[53] *Id.*
[54] The employee who provided the CPT Code was an employee of Delaware Surgical Group, P.A.

the depositions attached to the moving papers reveal a factual dispute as to what CPT Code was provided—that dispute is not appropriate for summary judgment.

*Negligent Infliction of Emotional Distress*

Defendants argue, in a somewhat conclusory fashion, Plaintiff has not met any of the requirements for this Count.  Defendants rely on their earlier argument regarding a failure to establish negligence.  Next, Defendant states Plaintiff was not within the zone of danger.  Finally, Defendants argue Plaintiff has not shown physical consequences.  They point out Plaintiff has not sought medical treatment for those injuries.

Plaintiff responds by pointing to *Fanean* to support his position regarding the zone of danger.  As to the physical consequences, Plaintiff argues that physical manifestation of emotional distress is sufficient under the law.  Factually, Plaintiff points out that he has suffered sleepless nights, nausea, increased stress, and loss of appetite.

"[W]here negligence proximately caused fright, in one within the immediate area of physical danger from that negligence, which in turn produced physical consequences such as would be elements of damage if a bodily injury had been

suffered, the injured party is entitled to recover…"[55]  Generally, the elements of a negligent infliction of emotional distress claim include:

(1) Negligence causing fright to Plaintiff

(2) Plaintiff was within the zone of danger, and

(3) Physical consequences because of the contemporaneous shock

Zone of danger is "that area where the negligent conduct causes the victim to fear for his or her own safety."[56]  There exists a distinction, significant to the facts of this case, among the decisions of this Court on negligent infliction of emotional distress as it relates to the zone of danger requirement.  This distinction is articulated in *Lupo*.[57]

> [T]he instant case is distinct from those emotional distress cases where an injury to a third person caused a plaintiff mental anguish or where a sudden, unexpected incident caused a plaintiff fright or shock. Rather, plaintiffs in this case alleged suffered direct injuries due to the negligence of the defendants.  Hence, emotional distress cases which deny recovery because the plaintiff was not in the "immediate zone of physical risk" are not applicable.  Instead the physical injury requirements in those cases where a defendant's negligent acts directly caused the alleged injuries establish the standard.

---

[55] *Robb v. Pennsylvania R. Co*., 210 A.2d 709 (Del. 1965).
[56] *Fanean v. Rite Aid Corp. of Delaware, Inc.,* 984 A.2d 812 (Del. Super. 2009) (internal citations omitted).
[57] *Lupo v. Medical Center of Delaware, Inc.,* 1996 WL 11132, at *3 (internal citations omitted) (Del. Super.).

Thus, *Lupo* stands for the proposition that "the zone of danger element is not applicable where plaintiff allege direct injuries due to defendant's negligence."[58] Because the information was allegedly communicated directly to Plaintiff, the Court finds the injuries alleged are direct. On that basis, the Court finds the specific facts of this case to fall within the *Lupo* line of analysis. The Court has previously found negligence above. Thus, the Court will look to the remaining factor of physical consequences to determine if there remains a genuine issue of material fact.

Direct injuries render the requisite zone of danger prong inapplicable; instead, a Negligent Infliction of Emotional Distress plaintiff must "allege direct injuries due to defendant's negligence."[59] According to Plaintiff, he suffered a direct injury due to the Defendants' negligence.[60] Namely, "he suffered significant physiological consequences, including 'sleepless nights,' 'nausea,' increased stress levels, and 'loss of appetite.'"[61] *Lupo* requires—in accord with the Second Restatement[62]—

---

[58] *Boas v. Christiana Care Health Services, Inc.,* 2023 WL 4842102, at *4 (Del. Super.) and *J.S. v. Edgemoor Cmty. Ctr., Inc.*, 2024 WL 139236, at *2 (Del. Super. 2024)

[59] *J.S. v. Edgemoor Cmty. Ctr., Inc.*, No. N23C-06-110 CLS, 2024 WL 139236, at *2 (Del. Super. Ct. Jan. 11, 2024) (citing *Lupo v. Med. Ctr. of Delaware, Inc.*, No. CIV. A. 94C-09-049, 1996 WL 111132, at *3 (Del. Super. Ct. Feb. 7, 1996)).

[60] Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment at pp. 10-12.

[61] Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment at p. 10.

[62] *See Lupo v. Med. Ctr. of Delaware, Inc.*, No. CIV. A. 94C-09-049, 1996 WL 111132, at *3-4 (Del. Super.) (quoting Restatement (Second) of Torts, § 436A(c)).

"long continued" symptoms, as opposed to those that are "transitory and non-recurring."[63]

Here, the alleged facts do not speak explicitly to the duration of Plaintiff's symptoms; i.e., he provides no express timeframe within which his symptoms have persisted. In his deposition, the extent and duration of his injuries are somewhat ambivalent.[64] However, he maintains his sleepless nights, loss of appetite, and nausea have persisted. Thus, to the extent that Plaintiff's assertions on his injuries may be subject to weakness, what is in the record constitutes a material issue of fact, particularly when viewed in the light most favorable to the Plaintiff. The record reflects cognizable injuries under *Lupo* and other similar cases.[65] The Court must

---

[63] *Lupo v. Med. Ctr. of Delaware, Inc.*, No. CIV. A. 94C-09-049, 1996 WL 111132, at *3-4 (Del. Super. Ct. Feb. 7, 1996)

[64] For example, on the topic of his sleeplessness, Plaintiff had the following exchange:
Q. And how many nights has that [sleeplessness] occurred?
A. I don't have a specific number. It can happen randomly, over the last year and a half, however long it's been.
Q. How often does it occur?
A. I'd say a couple of nights a week I'll have trouble sleeping.
Rogerson Dep. at p. 69.
Regarding Plaintiff's loss of appetite, he reported that it occurs "[m]aybe a couple times a month, maybe." *Id.* at 70:7. His nausea occurred for one or two days upon opening the surgery bill, and then "[r]andomly[.]" *Id.* at p. 70-71.

[65] Under *Lupo*, the Superior Court considered alleged "sleeplessness, headaches, crying spells, rage, nervousness, guilt, eating disorders and depression" in tandem with emotional distress. *Lupo v. Med. Ctr. of Delaware, Inc.*, 1996 WL 111132, at *2 (Del. Super. 1996). Because these manifestations fell within "long continued" physical phenomena—as opposed to "transitory and non-recurring" physical phenomena—they constituted "sufficient evidence of physical injury has been produced so as to establish a dispute as to material facts sufficient to overcome a motion for summary judgment." *Id.* at *3 (quoting Restatement (Second) of Torts, § 436A(c)).
Of course, the *Lupo* court referenced contrasting outcomes under potentially more severe facts, noting a distinguishing factor/point of distinction where clinical diagnoses exist. *Id.* at *4 (citing

not resolve conflicts that arise from the evidence.[66]

**NOW, THEREFORE,** this 29th day of August 2025, the Motion for Summary Judgement is GRANTED as to Count 1, Breach of Contract.  Summary Judgment is DENIED as to Count 2 Negligence and Count 3 Negligent Infliction of Emotional Distress.

**IT IS SO ORDERED**.

**/s/Sonia Augusthy**
Judge Sonia Augusthy

---

*Cooke v. Pizza Hut, Inc.*, 1994 WL 680051 (Del. Super.)) ("sleeplessness and nausea" constituted "transitory, non-recurring physical phenomena[.]")). *See also id.* at *4 (citing *Hostetter v. Hartford Ins. Co.,* 1992 WL 179423 (Del. Super.)) ("plaintiff's sleep problems due to nightmares, anxiety, depression, increased cigarette and alcohol use failed to allege the physical component sufficient to recover for negligent infliction of emotional distress.").

Despite these contrasting outcomes, more recent cases in the Superior Court have affirmed that symptoms such as depression, sleeplessness, anxiety, or nausea are sufficient. *Boas v. Christiana Care Health Servs., Inc.*, 2023 WL 4842102, at *3 (Del. Super.) (collecting cases).

[66] *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1149 (Del. 2002) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 254 (1986)).